UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIAM J. EDWARDS,<br><br>    Plaintiff,<br><br>v.<br><br>THE ORIGINAL FOOTWEAR COMPANY,<br><br>    Defendant. | Civil Action<br>No. 04-12593-RGS |

**MEMORANDUM OF DEFENDANT
THE ORIGINAL FOOTWEAR COMPANY
IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

**I. Introduction**

Plaintiff William J. Edwards ("Edwards") commenced this action against defendant, The Original Footwear Company ("Original"), a California corporation, in the Massachusetts Superior Court seeking damages for an alleged breach of contract and violation of G. L. c. 93A. Edwards claimed that Original owes him a commission on a sale of goods that Original made to a Delaware company with a principal place of business in New York. The goods that Original sold enabled the company in New York to fulfill its obligations under a public contract awarded to it by the State of Connecticut.

Original removed this action to this court, and now moves to dismiss on the ground that a court in Massachusetts lacks jurisdiction over its person.

## II. Statement of Facts

Original is a California business corporation. Affidavit of Terry Mackness ("Mackness Aff."), ¶2. Original was incorporated on March 24, 1999. Mackness Aff., ¶2., Exh. "A." Original's only place of business is located at 4901 Cloutier Drive, Salida, California. Mackness Aff., ¶2. Original is engaged in the business of the design, sourcing and sale of footwear, especially footwear used by law enforcement personnel.

In or about August, 2003, Thomas Carson ("Mr. Carson"), who was then Original's Senior Vice President and Sales Manager, attended the Trexpo East trade show in Baltimore, Maryland. Mackness Aff., ¶3. Mr. Carson was then, and is now, a resident of Modesto, California. Mackness Aff., ¶3.

While he was at the Maryland trade show, Mr. Carson met a representative from the Connecticut Department of Corrections. Mackness Aff., ¶4. The Connecticut Department of Corrections' representative expressed an interest in having its corrections officers utilize Original's boots as part of their uniform. Mackness Aff., ¶4. When Mr. Carson returned from the Maryland trade show to Original's California office, he arranged for a "wear test" for the Connecticut Department of Corrections. Mackness Aff., ¶5. Mr. Carson sent 16 pairs of boots to the Department of Corrections at their request. Mackness Aff., ¶5.

Some time later, around the end of 2003, the State of Connecticut issued an invitation for bids for boots for its Department of Corrections officers. Mackness Aff.,¶6. The bid request specified that certain boots were to be Original's "Classic Series" boots. Mackness Aff., ¶6.

At least three companies submitted bids to the State of Connecticut: (1) Horwitz Career Apparel & Uniform; (2) Magg & Sons; and (3) Lehigh Safety Shoe Co. LLC ("Lehigh"). Mackness Aff., ¶7. Lehigh's bid prevailed, and the State of Connecticut awarded a contract to Lehigh to supply the Connecticut Department of Corrections with Original boots for its officers. Mackness Aff., ¶8, and Exh. "C." Lehigh is a Delaware limited liability company with a principal place of business at Vestal, New York. Mackness Aff., ¶8, and Exh. "B."

After the State of Connecticut awarded the contract to Lehigh, Lehigh contacted Original and ordered Original boots to fulfill its contract requirements with the State of Connecticut. Mackness Aff., ¶9. Lehigh arranged to have a common carrier take delivery of the boots in California. Mackness Aff., ¶9. Original invoiced Lehigh at its New York office for the boots that it ordered to fulfill its contract with the State of Connecticut. Mackness Aff., ¶9.

Although plaintiff William J. Edwards ("Mr. Edwards") is a party to an Independent Sales Representative Agreement with Original (the "Agreement"), Mr. Edwards' sales territory does not include the State of New York where Lehigh is located. Mackness Aff., ¶10, Exh. "D." At no time did anyone from Original travel to Massachusetts to negotiate the Agreement or to obtain Mr. Edwards' signature on it. Mackness Aff., ¶11. Mr. Edwards returned the signed Agreement to Original's California office by mail. Mackness Aff., ¶

During the years 2000 through 2004, Original has had total Massachusetts sales of approximately $222,249. Mackness Aff., ¶12. All Original sales in Massachusetts have resulted from orders received by telephone, mail, or facsimile from Original's

Massachusetts customers, or from Original's regional sales representative. Mackness Aff., ¶12.

Only once has any Original employee traveled to Massachusetts on business. Mackness Aff., ¶13. During mid-2001, Mr. Carson accompanied Mr. Edwards on sales calls to train him in selling footwear. Mackness Aff., ¶13. Save that one visit to train Mr. Edwards, no Original employee has solicited business in Massachusetts in person, nor has any Original employee solicited any business in Massachusetts by telephone, email or facsimile. Mackness Aff., ¶13.

Original does not mail advertising materials to anyone in Massachusetts other than accounts that have previously purchased Original's products. Mackness Aff., ¶14. Original does not advertise in any publications that are published in Massachusetts. Mackness Aff., ¶14. Original only publishes advertising in six magazines or trade journals: "Law and Order," "Police and Security," "Law Enforcement Product News," "Tactical Response," "Ansom," and "Army and Navy Stores." Mackness Aff., ¶14.

Original only maintains one website. Mackness Aff., ¶15. Original's website does not have a product order form in any prominence, as the primary purpose of the site is not to sell but inform. Mackness Aff., ¶15. Original does not advertise on third-party websites. Mackness Aff., ¶15.

Original does not maintain a place of business in Massachusetts. Original does not own any property, real or personal, that is located in Massachusetts. Mackness Aff., ¶16. Original does not maintain any bank accounts in Massachusetts. Mackness Aff., ¶16. Original does not maintain any telephone listing in Massachusetts. Mackness Aff., ¶16. Original has never attended a trade show in Massachusetts. Mackness Aff., ¶16.

All of Original's employees reside in California. Mackness Aff., ¶17. All of Original's business records are located in California. Mackness Aff., ¶17. Original's general counsel is located in California. Mackness Aff., ¶17. Defending this action in Massachusetts is a burden to Original. Mackness Aff., ¶17.

### III. Argument

### A. Background Law

Edwards bears the burden of proving that this court may exercise personal jurisdiction over Original. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). Because Original is a California corporation with no presence in Massachusetts, a court sitting in Massachusetts cannot exercise personal jurisdiction over it unless Edwards establishes: (1) that the Massachusetts long arm statute, G. L. c. 223A, grants jurisdiction, and (2) that the exercise of jurisdiction under that statute is consistent with the due process requirements of the Fourteenth Amendment. Id., at 52. The Supreme Judicial Court of Massachusetts has construed Massachusetts' long arm statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441, 443 (1972). Accordingly, this court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis." Daynard, 290 F.3d, at 52.

The Due Process Clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant only when that defendant has sufficient minimum contacts with the forum state "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe

5

Co. v. Washington, 326 U.S. 310, 316 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.' " Burger King v. Rudzewicz, 471 U.S. 462, 471-472 (1985), quoting International Shoe, 326 U.S., at 319. Where, as here, federal subject matter jurisdiction has been asserted on the basis of diversity of citizenship, the federal district court "is the functional equivalent of a state court sitting in the forum state." Ticketmaster-New England, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994).

Before a district court may exercise personal jurisdiction over a defendant, a plaintiff must establish jurisdiction under at least one of two theories: specific personal jurisdiction or general personal jurisdiction. Massachusetts School of Law at Andover, Inc. v. American Bar Association, 142 F.3d 26, 34 (1st Cir. 1998). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum based activities." Id. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Electrical, Radio & Machine Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1st Cir. 1992).

### B. Specific Jurisdiction

Determining whether a plaintiff's allegation of facts supports an assertion of specific jurisdiction requires a three pronged inquiry: (1) whether the claim underlying the litigation "relates to or arises out of the defendant's contacts with the forum;" (2) whether those contacts constitute "purposeful availment of the benefits and protections

6

afforded by the forum's laws;" and (3) only if the first two requirements are met, then whether the exercise of jurisdiction is reasonable. Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

Under these standards, Edwards cannot establish that this court may exercise specific personal jurisdiction over Original because Edwards' underlying claim for a commission does not relate to or arise out of Original's contacts with Massachusetts.[1] The fact that Original and Edwards are parties to an Independent Sales Representative Agreement is not itself a sufficient contact with Massachusetts for purposes of establishing personal jurisdiction. "A contract, by itself, cannot automatically establish minimum contacts." United States v. Swiss American Bank, Ltd., 274 F.3d 610, 621 (2001), citing Burger King, 471 U.S, at 478. See also Ganis Corp. of California v. Jackman, 822 F.2d 194, 197 (1st Cir. 1987) ("Certainly, the mere fact that an individual in Massachusetts executes a contract with a person in California does not automatically constitute sufficient contacts so as to confer a finding of personal jurisdiction.").

The reason that a contract alone cannot constitute the minimum contacts needed to exercise personal jurisdiction is because the Supreme Court has adopted a "contract

---

[1] Although the merits of Edwards' claims are not before this court on this motion to dismiss for lack of personal jurisdiction, it should nonetheless be apparent that he has no likelihood of success on the merits of his claims. Edwards is only entitled to a commission when he has made a sale within his sales territory, which his Independent Sales Representative Agreement defines as the six New England states. Original itself sold the subject goods to a New York entity. New York is not within Edwards' sales territory. The fact that the New York entity later resold the goods to the State of Connecticut is irrelevant to Edwards' contract-based claim to a commission from Original. Moreover, Edwards did nothing to facilitate the sale. Edwards cannot prevail on his claim under G. L. c. 93A either. The "center of gravity" of Original's actions (which were not unfair or deceptive in any event) was in California, and therefore did not occur "primarily and substantially" in Massachusetts as required in order for that statute to apply. See Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 475 (2003).

7

plus" requirement for establishing jurisdiction in these circumstances. <u>Swiss American Bank</u>, 274 F.3d, at 622, citing <u>Burger King v. Rudzewicz</u>, 471 U.S., at 478-479. The "contract plus" approach requires, in addition to a contract, an analysis of jurisdictional contacts as they relate to prior negotiations, future consequences, the terms of the agreement, and the parties course of dealing. <u>Burger King</u>, 471 U.S., at 479. Thus, Edwards must be able to point to other conduct of Original that relates to his claim in order to establish specific personal jurisdiction. <u>Id</u>. He must identify relevant jurisdictional contacts between Original and Massachusetts in the negotiation of his agreement, in the terms of his agreement, and in the subsequent course of dealing that led to his claim in order to meet his burden. <u>Id</u>. This he cannot do.

 First, no one from Original traveled to Massachusetts to negotiate or sign the Independent Sales Representative Agreement. Mackness Aff., ¶11. Edwards returned the agreement to Original in California by mail. Mackness Aff., ¶11. Other than a single trip to Massachusetts to train Edwards, no Original personnel have traveled to this state on business. Mackness Aff., ¶12. Second, and more significantly, Original had no contacts with Massachusetts in its course of dealing with Edwards that relate in any way to this claim. Original's underlying sale of goods to Lehigh, which is located in New York, arose as the result of the State of Connecticut's contract award to Lehigh after a competitive public bidding process. Mackness Aff., ¶9. Original's course of dealing with Lehigh involved contacts occurring only in California and New York. Mackness Aff., ¶9. The initial introduction of Original to the Connecticut Department of Corrections, the end-user of Original's products after a re-sale by Lehigh, occurred in the State of Maryland. Mackness Aff., ¶¶3, 4. Simply put, there are no contacts between Original and

Massachusetts that relate to Edwards' claim. Hence, Edwards cannot meet the constitutional requirement of "relatedness" to establish specific personal jurisdiction.

Because there are no identifiable contacts between Original and Massachusetts to satisfy the first prong of the specific jurisdiction test - relatedness, there can be no analysis of the second prong as to whether Original purposefully availed itself of the benefits and protections of Massachusetts laws. Regardless, Original did not purposefully avail itself of any benefits or protections afforded by Massachusetts. To the contrary, the fact that Original and Edwards agreed to apply *California* law to "govern, enforce, determine and construe" the Independent Sales Representative Agreement, Mackness Aff., Exh. "D," constitutes evidence that Original did not intend to purposefully avail itself of the benefits and protections afforded by Massachusetts. See, e.g., Ganis Corp. of California, 822 F.2d, at 198 (a contractual choice of law clause together with performance of the contract for a period of time reinforces "deliberate affiliation" with a forum and the "reasonable forseeability of possible litigation" in that forum).

Because Edwards cannot establish relatedness or purposeful availment there can be no basis to determine whether an exercise of jurisdiction would be reasonable. See Phillips Exeter Academy, 196 F.3d, at 288. In sum, there is no basis for an exercise of specific personal jurisdiction over Original with respect to Edwards' claim.

### C. General Jurisdiction

Whether general personal jurisdiction may be asserted depends upon the "quality and quantity of contacts between the potential defendant and the forum." Id. There are two criteria: (1) there must be "continuous and systematic general business contacts"

between the defendant and the forum, and (2) the exercise of personal jurisdiction must be reasonable in light of five "gestalt" factors. Swiss American Bank, 274 F.3d, at 619.

However, "[t]he standard for evaluating whether these [forum] contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions." Noonan v. Winston, 135 F.3d 85, 93 (1st Cir. 1998). The Supreme Court has observed that even where a defendant may engage in substantial business activity in a forum state, such activity "may not be so substantial as to support jurisdiction over a cause of action *unrelated* to those activities." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 779 (1984) (distribution of at least 10,000-15,000 magazines per month in the forum state may not have been sufficient to support general personal jurisdiction)(emphasis added).

There cannot be any valid exercise of general personal jurisdiction over Original in this case. This is because the quality and quantity of Original's contacts with Massachusetts are even more attenuated than the contacts of foreign defendants in other cases in which federal courts in the First Circuit have found such contacts to be insufficient. For example, in Noonan v. Winston Co., 135 F.3d 85 (1st Cir. 1998), the First Circuit affirmed the dismissal on personal jurisdiction grounds of a civil action pending in the District of Massachusetts. There, the defendant Colour Library Books ("CLB") had "regularly solicited business" with a Massachusetts company over a two year period, including making trips to Massachusetts "with the intention of developing a relationship" with that company, all of which resulted in $585,000 of Massachusetts sales. Id., at 92-93. The First Circuit agreed with the District Court that these contacts

were not sufficiently "continuous and systematic" to support the exercise of general personal jurisdiction against CLB. Id., at 93-94.

Similarly, in United States v. Swiss American Bank, Ltd., 274 F.3d 610 (1st Cir. 2001), the Court of Appeals affirmed the dismissal of a complaint for lack of personal jurisdiction.[2] There the defendant had the following forum-based contacts: two credit card agreements, a joint-venture agreement with a bank, a contract for ATM services, four bank accounts, a $350,000 loan, and two business transactions, in addition to having information posted on three websites. Id., at 619. The First Circuit ruled that these contacts were also insufficient to support general personal jurisdiction.

More recently, this court has refused to find grounds for the exercise of personal jurisdiction in a case involving Massachusetts contacts that are greater than those of Original. In Levin v. Harned, 304 F.Supp.2d 136 (D. Mass. 2003) (Saris, J.), the court adopted in part the Report and Recommendation of a Magistrate Judge and dismissed the plaintiff's complaint against defendant Newel Art Galleries, Inc. ("Newell") for lack of sufficient minimum contacts to establish personal jurisdiction. Id., at 142, 161-163. Newell, a business based in New York, had made $666,565 in Massachusetts sales over seven and a half years, had advertised in five national magazines, including Architectural Digest, Town and Country, and House and Garden, advertised in the New York Times, and had operated its own website. Id., at 159-163. These contacts were deemed not

---

[2] Because subject matter jurisdiction in Swiss American Bank was predicated upon a federal question, the Court of Appeals performed its due process analysis under the Fifth Amendment as opposed to the Fourteenth Amendment, which applies where, as here, diversity of citizenship serves as the jurisdictional predicate. Accordingly, the focus in Swiss American Bank was on the defendant's contacts with the United States as the applicable forum as opposed to the defendant's contacts with a particular state. Apart from that distinction, the minimum contacts analysis is the same. Id., 274 F.3d, at 618.

11

sufficiently "continuous and systematic" to support the exercise of general personal jurisdiction. Id.

Original has even fewer contacts with Massachusetts than did the defendants in cases just cited. Original has only had Massachusetts sales of $222,249 over four years compared to sales of $585,000 over two years in Noonan, and sales of $666,565 over seven and a half years in Levin. Mackness Aff., ¶12. Original advertises in only six trade journals as opposed to the six national magazines and newspapers in which Newell advertised in Levin. Although two trips to Massachusetts for the express purpose of arranging business relationships did not preclude a finding of no jurisdiction in Noonan, Original has never dispatched an employee to Massachusetts for any purpose other than to train Edwards. Finally, unlike the defendant in Swiss American Bank, Original has no property or bank accounts in the forum state.

Because Noonan, Swiss American Bank, and Levin each had defendants with more significant contacts with Massachusetts than does Original and yet were found not subject to general personal jurisdiction, it follows then that Original cannot be subject to jurisdiction in Massachusetts either. See, e.g., Levin v. Harned, 304 F.Supp.2d, at 163 ("because defendant['s]...overall contacts in Massachusetts are less continuous and systematic than those in other First Circuit cases where general jurisdiction was not found, this court concludes that plaintiffs have failed to show a basis for the exercise of general jurisdiction... .").

Inasmuch as Edwards cannot establish "continuous and systematic" contacts to support an exercise of general jurisdiction, this court need not determine whether any such exercise of general personal jurisdiction would be "reasonable." See . Swiss

American Bank, 274 F.3d, at 619. Nonetheless, Edwards cannot meet this requirement either.

The reasonableness of an exercise of general personal jurisdiction is assessed in light of five "gestalt" factors. Id. These factors are "[1] the plaintiff's interest in obtaining convenient and effective relief; [2] the burden imposed upon the defendant by requiring it to appear; [3] the forum's adjudicatory interest; [4] the interstate judicial system's interest in the place of adjudication; and [5] the common interest of all affected sovereigns, state and federal, in promoting substantive social policies." Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990), citing Burger King, 471 U.S., at 477.

These factors, as applied to the facts of this case, do not compel the conclusion that jurisdiction would be reasonable. Although Edwards would undoubtedly prefer to litigate this claim in Massachusetts as a matter of convenience, he is not precluded from pursuing it elsewhere. Moreover, that preference is more than outweighed by the burden that Original must bear given that all of its employees are in California, all of its corporate records are in California, and its general counsel is in California. Mackness Aff., ¶17. None of the other "gestalt" factors militate in favor of Massachusetts as a forum. The fact that the parties chose *California* law to apply to any dispute arising under the Independent Sales Representative Agreement, however, suggests that a court in Massachusetts, as well as the interstate judicial system and all affected sovereigns, would not have an interest in adjudicating this matter in Massachusetts. See, e.g., Ganis Corp. of California, 822 F.2d, at 198 (a contractual choice of law clause together with performance of the contract for a period of time reinforces "deliberate affiliation" with a forum and the "reasonable forseeability of possible litigation" in that forum).

## IV. Conclusion

For the reasons stated, Original's Motion to Dismiss for Lack of Personal Jurisdiction should be granted, this action should be dismissed, Original should be awarded its costs, and Original should be granted such other relief as may be just.

THE ORIGINAL FOOTWEAR COMPANY
By its Attorneys

*/s/ Bruce F. Smith*
Bruce F. Smith
BBO# 467900
Howard P. Blatchford, Jr.
BBO# 045580
JAGER SMITH P.C.
One Financial Center
Boston, MA 02111
(617) 951-0500

Dated: January 14, 2005.

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail (by hand) on 1-14-2005