UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM J. EDWARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action |
| | ) No. 04-12593-RGS |
| | ) |
| THE ORIGINAL FOOTWEAR COMPANY, | ) |
| | ) |
| Defendant. | ) |

**AFFIDAVIT OF TERRY MACKNESS
IN SUPPORT OF MOTION OF DEFENDANT
THE ORIGINAL FOOTWEAR COMPANY
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

I, Terry Mackness, state on oath the following:

1.      I reside at 7344 del Cielo Way, Modesto, California. I am the President

and Chief Executive Officer of The Original Footwear Company, Inc. ("Original").

2.      Original is a California business corporation. Original was incorporated on

March 24, 1999.  Original's only place of business is located at 4901 Cloutier Drive,

Salida, California. Attached as Exhibit "A" is a copy of Original's corporate information

as posted on the website of the Secretary of State of California. Original is engaged in

the business of the design, sourcing and sale of footwear, especially footwear used by law

enforcement personnel.

3.      In or about August, 2003, Thomas Carson (Mr. Carson"), who was then

Original's Senior Vice President and Sales Manager, attended the Trexpo East trade show

in Baltimore, Maryland.  Mr. Carson was then, and is now, a resident of Modesto, California.

4.    While he was at the Maryland trade show, Mr. Carson met a representative from the Connecticut Department of Corrections. The Connecticut Department of Corrections' representative expressed an interest in having its corrections officers utilize Original's boots as part of their uniform.

5.    When Mr. Carson returned from the Maryland trade show to Original's California office, he arranged for a "wear test" for the Connecticut Department of Corrections. Mr. Carson sent 16 pairs of boots to the Department of Corrections as per their request.

6.    Some time later, around the end of 2003, I learned that the State of Connecticut had issued an invitation for bids for boots for its Department of Corrections officers. I am informed that the bid request specified that certain boots were to be Original's "Classic Series" boots.

7.    I am aware that at least three companies submitted bids to the State of Connecticut: (1) Horwitz Career Apparel & Uniform; (2) Magg & Sons; and (3) Lehigh Safety Shoe Co. LLC ("Lehigh").

8.    Lehigh's bid prevailed, and the State of Connecticut awarded a contract to Lehigh to supply the Connecticut Department of Corrections with Original boots for its officers. Lehigh is a Delaware limited liability company with a principal place of business at Vestal, New York. A copy of Lehigh's corporate information as posted on the New York Department of State website is attached as Exhibit " B." A copy of

2

Connecticut's Contract Award to Lehigh, No. 03PSX0378, dated April 26, 2004, is attached as Exhibit " C. "

9.    After the State of Connecticut awarded the contract to Lehigh, Lehigh contacted Original and ordered Original boots to fulfill its contract requirements with the State of Connecticut. Lehigh arranged to have a common carrier take delivery of the boots in California. Original invoiced Lehigh at its New York office for the boots that it ordered to fulfill its contract with the State of Connecticut.

10.    Although plaintiff William J. Edwards ("Mr. Edwards") is a party to an Independent Sales Representative Agreement with Original (the "Agreement"), Mr. Edwards' sales territory does not include the State of New York where Lehigh is located. A copy of the Agreement, which requires the application of California law, is attached as Exhibit " D."

11.    At no time did anyone from Original travel to Massachusetts to negotiate the Agreement or to obtain Mr. Edwards' signature on it. Mr. Edwards returned the signed Agreement to Original's California office by mail.

12.    During the years 2000 through 2004, Original has had total Massachusetts sales of approximately $222,249. All Original sales in Massachusetts have resulted from orders received by telephone, mail, or facsimile from Original's Massachusetts customers, or from Original's regional sales representative.

13.    Only once has any Original employee traveled to Massachusetts on business. During mid-2001, Mr. Carson accompanied Mr. Edwards on sales calls to train him in selling footwear. Save that one visit to train Mr. Edwards, no Original employee

3

has solicited business in Massachusetts in person, nor has any Original employee solicited any business in Massachusetts by telephone, email or facsimile.

14.    Original does not mail advertising materials to anyone in Massachusetts other than accounts that have previously purchased Original's products. Original does not advertise in any publications that are published in Massachusetts. Original only publishes advertising in six magazines or trade journals: "Law and Order," "Police and Security," "Law Enforcement Product News," "Tactical Response," "Ansom," and "Army and Navy Stores."

15.    Original only maintains one website. Original's website does not have a product order form in any prominence, as the primary purpose of the site is not to sell but inform. Original does not advertise on third-party websites.

16.    Original does not maintain a place of business in Massachusetts. Original does not own any property, real or personal, that is located in Massachusetts. Original does not maintain any bank accounts in Massachusetts. Original does not maintain any telephone listing in Massachusetts. Original has never attended a trade show in Massachusetts.

17.    All of Original's employees reside in California. All of Original's business records are located in California. Original's general counsel is located in California. Defending this action in Massachusetts is a burden to Original.

Signed under the pains and penalties of perjury this 12th day of January, 2005.

Terry Mackness

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail (by hand) on _1-14-2005_

4

# California Business Portal

**DISCLAIMER:** The information displayed here is current as of DEC 31, 2004 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| THE ORIGINAL FOOTWEAR COMPANY | | |
| **Number:** C2158345 | **Date Filed:** 3/24/1999 | **Status:** active |
| **Jurisdiction:** California | | |
| **Address** | | |
| 4901 CLOUTIER DRIVE | | |
| SUITE B | | |
| SALIDA, CA 95368 | | |
| **Agent for Service of Process** | | |
| TERRY MACKNESS | | |
| 4901 CLOUTIER DRIVE | | |
| SUITE B | | |
| SALIDA, CA 95368 | | |

For information about certification of corporate records or for additional corporate information, please refer to Corporate Records. If you are unable to locate a corporate record, you may submit a request to this office for a more extensive search. Fees and instructions for requesting this search are included on the Corporate Records Order Form.

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

# NYS Department of State
## Division of Corporations

# Entity Information

**Selected Entity Name:** LEHIGH SAFETY SHOE CO. LLC

---

**Current Entity Name:** LEHIGH SAFETY SHOE CO. LLC
**Initial DOS Filing Date:** MARCH 16, 2000
**County:** BROOME
**Jurisdiction:** DELAWARE
**Entity Type:** FOREIGN LIMITED LIABILITY COMPANY
**Current Entity Status:** ACTIVE

---

**DOS Process** (Address to which DOS will mail process if accepted on behalf of the entity)
C/O CT CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK 10011

**Registered Agent**
CT CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK 10011

**NOTE:** New York State does not issue organizational identification numbers.

[ Search Results ] [ Search the Database ]

[ Division of Corporations, State Records and UCC Home Page ] [ NYS Department of State Home Page ]

**CONTRACT AWARD**
RFP-38 NEW 6/98

# STATE OF CONNECTICUT
### *DEPARTMENT OF ADMINISTRATIVE SERVICES*
### PROCUREMENT SERVICES
### 165 Capitol Avenue, 5th Floor South

### PO Box 150414
### HARTFORD, CT 06115-0414

**Julie Bernosky**
*Contract Specialist*

**(860)713-5065**
*Telephone Number*

| CONTRACT AWARD NO.: |
| --- |
| **03PSX0378** |

| Contract Award Date: |
| --- |
| April 26, 2004 |

| RFP Due Date: |
| --- |
| 2 December 2003 |

## CONTRACT AWARD

**IMPORTANT: THIS IS NOT A PURCHASE ORDER. DO NOT PRODUCE OR SHIP WITHOUT AN AGENCY PURCHASE ORDER.**

DESCRIPTION: Footwear for Department of Correction

FOR: Department of Correction
24 Wolcott Hill Road
Wethersfield, CT 06109

**TERM OF CONTRACT / DELIVERY DATE REQUIRED:**
Date of Award through January 31, 2008

**AGENCY REQUISITION NUMBER: 00007100**

| IN STATE (NON-SB) CONTRACT VALUE | DAS *CERTIFIED* SMALL BUSINESS CONTRACT VALUE | OUT OF STATE CONTRACT VALUE | TOTAL CONTRACT AWARD VALUE |
| --- | --- | --- | --- |
| | | $1,500,000.00 est. | $1,500,000.00 est. |

NOTICE TO CONTRACTORS: This notice of award is not an order to ship. Purchase Orders against contracts will be furnished by the using agency or agencies on whose behalf the contract is made.
INVOICE SHALL BE RENDERED DIRECT TO THE ORDERING AGENCY.
**NOTE:** Dollar amounts listed next to each contractor are possible award amounts, however, they do not reflect any expected purchase amounts (actual or implied). They are for CHRO use only.
NOTICE TO AGENCIES: A complete explanatory report shall be furnished promptly to the Procurement Manager concerning items delivered and/or services rendered on orders placed against awards listed herein which are found not to comply with the specifications or which are otherwise unsatisfactory from the agency's viewpoint, as well as failure of the contractor to deliver within a reasonable period of time specified. Please issue orders and process invoices promptly.
CASH DISCOUNTS: Cash discounts, if any, shall be given SPECIAL ATTENTION, but such cash discount shall not be taken unless payment is made within the discount period.
PRICE BASIS: Unless otherwise noted, prices include delivery and transportation charges fully prepaid f.o.b. agency. No extra charge is to be made for packing or packages.

**CONTRACTOR INFORMATION:**

*Company Name:* **Lehigh Safety Shoe Co., LLC**
*Address:* **120 Plaza Drive, Suite A, Vestal, NY 13850**
*Tel. No.:* **1-800-444-4086**          *Fax No.:* **607-584-5138**
*Contact Person:* **Stephen Drapp, Jr.**
*Certification Type (SBE,MBE, WBE or None):* **None**     *Terms:* **Net 45 Days**
*Remittance Address:* **PO Box 371958, Pittsburgh, PA 15250**
*Company E-mail Address and/or Company Web Site:* **Service@lehighsafetyshoes.com**

*Contract Value:* **$1,500,000.00 est.**
*Delivery:* **As required**
*Agrees to Supply Political SubDivisions:* **N/A**

*APPROVED* _____

**JULIE BERNOSKY**
*Contract Specialist*
(Original Signature on Document in Procurement Files)

Date Issued: 26 April 2004

CONTRACT AWARD
SCHEDULE

RFP-39 NEW 6/98

**Julie Bernosky**
*Buyer Name*

**(860)713-5065**
*Buyer Phone Number*

# STATE OF CONNECTICUT
## PROCUREMENT SERVICES
# CONTRACT AWARD
# SCHEDULE

CONTRACT AWARD #:
03PSX0378

Page  1  OF  2

| ITEM # | DESCRIPTION OF COMMODITY AND/OR SERVICES | UNIT OF MEASURE | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|
| 1. | Original S.W.A.T. Classic 8" 1150, 1150-F & 1150-W Category: Tactical Athletic Fit, Lightweight, Leather Fabric Boot designed for Law Enforcement Professionals. Black only. | EA. | $70.00 | |
| 2. | Original S.W.A.T. Classic 6" 1151, 1151-F & 1151-W Category: Tactical Athletic Fit, Lightweight, Leather, Fabric Boot designed for Law Enforcement Professionals. Black only. | EA. | $69.00 | |
| 3. | Original S.W.A.T. Classic 9" Side Zip 1152, 1152-F & 1152-W Category: Tactical Athletic Fit, Lightweight, Leather Fabric Boot designed for Law Enforcement Professionals. Black only. | EA. | $74.00 | |
| 4. | Lehigh Safety Slip Grips  Black Soft Toe Slip Resistant HiTop Hiker Black Athletic Leather 7333L -- Mens 7373L -- Womens | EA. EA. | $52.49 $52.49 | |
| 5. | Lehigh Safety Shoes  Black Soft Toe Slip Resistant Oxford 7430 -- Men's 7480 -- Women's | EA. EA. | $44.99 $44.99 | |
| 6. | Lehigh Safety Shoes Comfort Max --Hi Top Hiker (Mid) Slip Resistant 7433 -- Mens 7473 - Ladies | EA. EA. | $59.99 $59.99 | |
| 7. | Lehigh SafetyShoes NuGuard 75  6" Boot 5088 -- Mens | EA. | $64.49 | |

CONTRACT AWARD
SCHEDULE

RFP-39 NEW 6/98

**Julie Bernosky**
*Buyer Name*

**(860)713-5065**
*Buyer Phone Number*

# STATE OF CONNECTICUT
## PROCUREMENT SERVICES
## CONTRACT AWARD
## SCHEDULE

| CONTRACT AWARD #: |
|---|
| 03PSX0378 |

Page    2   OF   2

| ITEM # | DESCRIPTION OF COMMODITY AND/OR SERVICES | UNIT OF MEASURE | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|
| 8. | Lehigh Safety Shoes – NuGuard 75   8" Boot<br>5148 -  Mens<br>588  - Womens<br><br>**AWARDED VENDOR:**<br>**LEHIGH SAFETY SHOE CO., LLC**<br>**CONTACT:  STEPHEN DRAPP JR.**<br>**PHONE:  607-584-5048** | EA.<br>EA. | $69.49<br>$64.49 | |

STANDARD RFP
TERMS AND CONDITIONS
RFP-19 Rev. 11/02
Prev. Rev. 04/02

**Julie Bernosky**
*Buyer Name*

**(860)713-5065**
*Buyer Phone Number*

# STATE OF CONNECTICUT
## *DEPARTMENT OF ADMINISTRATIVE SERVICES*
### PROCUREMENT SERVICES
165 Capitol Avenue, Room G-8A, Ground Floor
**PO Box 150414**
**HARTFORD, CT 06115-0414**

| RFP NO.: |
|---|
| 03PSX0378 |

## Standard Request for Proposal (RFP) and Contract Terms and Conditions - Page 1 of 3

**All Requests for Proposal issued by the Department of Administrative Services, Procurement Services will bind Proposers to the terms and conditions listed below, unless specified otherwise in any individual Request for Proposal.**

**Incorporated by reference into this contract are applicable provisions of the Connecticut General Statutes including but not limited to Sections 4a-50 through 4a-80 and applicable provisions of the Regulations of Connecticut State Agencies including but not limited to Sections 4a-52-1 through 4a-52-22.**

**The contractor agrees to comply with the regulations referred to in this section as they exist on the date of this proposal and as they may be adopted or amended from time to time during the term of this contract and any amendments thereto.**

### Submission of Proposals
1. Proposals must be submitted on forms supplied by Procurement Services. Telephone or facsimile proposals will not be accepted in response to a Request for Proposal.

2. The time and date proposals are due is given in each RFP issued. Proposals received after the specified due date and time of RFP given in each RFP shall not be considered. RFP envelopes must clearly indicate the RFP number as well as the date and time that the RFP is due. The name and address of the Proposer should appear in the upper left hand corner of the envelope.

3. Incomplete RFP forms may result in the rejection of the proposal. Amendments to proposals received by Procurement Services after the due date and time specified, shall not be considered. An original and one copy of the proposal schedule shall be returned to Procurement Services. Proposals shall be computer prepared, typewritten or handwritten in ink. Proposals submitted in pencil shall be rejected. All proposals shall be signed by a person duly authorized to sign proposals on behalf of the proposer. Unsigned proposals shall be rejected. Errors, alterations or corrections on both the original and copy of the proposal schedule to be returned must be initialed by the person signing the proposal or their authorized designee. In the event an authorized designee initials the correction, there must be written authorization from the person signing the proposal to the person initialing the erasure, alterations, or correction. Failure to do so shall result in rejection of the proposal for those items erased, altered or corrected and not initialed.

4. Conditional proposals are subject to rejection in whole or in part. A conditional proposal is defined as one which limits, modifies, expands or supplements any of the terms and conditions and/or specifications of the Request for Proposal.

5. Alternate proposals will not be considered. An alternate proposal is defined as one which is submitted in addition to the proposers primary response to the Request for Proposal.

6. Prices should be extended in decimal, not fraction, to be net, and shall include transportation and delivery charges fully prepaid by the Contractor to the destination specified in the proposal, and subject only to cash discount.

7. Pursuant to Section 12-412 of the Connecticut General Statutes, the State of Connecticut is exempt from the payment of excise, transportation and sales taxes imposed by the Federal Government and/or the State. Such taxes must not be included in proposal prices.

8. In the event of a discrepancy between the unit price and the extension, the unit price shall govern.

9. By its submission the proposer represents that the proposal is not made in connection with any other proposer submitting a proposal for the same commodity or commodities and is in all respects fair and without collusion or fraud.

10. All proposals are subject to public inspection upon award.

### Guaranty or Surety
11. Proposal and or performance bonds may be required. Bonds must meet the following requirements: Corporation - must be signed by an official of the corporation above their official title and the corporate seal must be affixed over the signature; Firm or Partnership - must be signed by all the partners and indicate they are "doing business as"; Individual - must be signed by the owner and indicated as "Owner". The surety company executing the bond or countersigning must be licensed in Connecticut and the bond must be signed by an official of the surety company with the corporate seal affixed over their signature. Signatures of two witnesses for both the principal and the surety must appear on the bond. Power of attorney for the official signing the bond for the surety company must be submitted with the bond.

### Samples
12. Accepted proposal samples do not supersede specifications for quality unless sample is superior in quality. All deliveries shall have at least the same quality as the accepted proposal sample.

13. Samples are furnished free of charge. Proposer must indicate if their return is desired, provided they have not been made useless by test. Samples may be held for comparison with deliveries.

### Award
14. Award will be based on quality of the articles or services to be supplied, their conformance with specifications, delivery terms, price, administrative costs, past performance, and financial responsibility.

15. Procurement Services may reject any proposer in default of any prior contract or guilty of misrepresentation or any proposer with a member of its firm in default or guilty of misrepresentation.

16. Procurement Services may correct inaccurate awards resulting from clerical or administrative errors.

STANDARD RFP
TERMS AND CONDITIONS
RFP-19 Rev. 11/02
Prev. Rev. 04/02
**Julie Bernosky**
*Buyer Name*

**(860)713-5065**
*Buyer Phone Number*

# STATE OF CONNECTICUT
*DEPARTMENT OF ADMINISTRATIVE SERVICES*
PROCUREMENT SERVICES
165 Capitol Avenue, Room G-8A, Ground Floor
PO Box 150414
HARTFORD, CT 06115-0414

RFP NO.:

03PSX0378

## Standard Request for Proposal (RFP) and Contract Terms and Conditions - Page 2 of 3

### Contract

17. The existence of the contract shall be determined in accordance with the requirements set forth above. However, the award of the contract is not an order to ship.

18. The Contractor shall not assign or otherwise dispose of their contract or their right, title or interest, or their power to execute such contract to any other person, firm or corporation without the prior written consent of Procurement Services.

19. Proposers have ten days after notice of award to refuse acceptance of the award; after ten days the award will be binding on the Contractor. If the Contractor refuses to accept the award within the ten day period, the award will be made to the next lowest responsible qualified proposer.

20. Failure of a Contractor to deliver commodities or perform services as specified will constitute authority for Procurement Services to purchase these commodities or services on the open market. The Contractor agrees to promptly reimburse the State for excess cost of these purchases. The purchases will be deducted from the contracted quantities.

21. Rejected commodities must be removed by the Contractor from State premises within 48 hours. Immediate removal may be required when safety or health issues are present.

22. Contractor agrees to: hold the State harmless from liability of any kind for the use of any copyright or uncopyrighted composition, secret process, patented or unpatented invention furnished or used in the performance of the contract; guarantee their products against defective material or workmanship; repair damages of any kind, for which they are responsible to the premises or equipment, to their own work or to the work of other contractors; obtain and pay for all licenses, permits, fees etc. and to give all notices and comply with all requirements of city or town in which the service is to be provided and to the State of Connecticut; to carry proper insurance to protect the State from loss.

23. Notwithstanding any provision or language in this contract to the contrary, the Commissioner may terminate this contract whenever he/she determines in his/her sole discretion that such termination is in the best interests of the State. Any such termination shall be effected by delivery to the Contractor of a written notice of termination. The notice of termination shall be sent by registered mail to the Contractor address furnished to the State for purposes of correspondence or by hand delivery. Upon receipt of such notice, the Contractor shall both immediately discontinue all services affected (unless the notice directs otherwise) and deliver to the State all data, drawings, specifications, reports, estimates, summaries, and such other information and materials as may have been accumulated by the Contractor in performing his duties under this contract, whether completed or in progress. All such documents, information, and materials shall become the property of the State. In the event of such termination, the Contractor shall be entitled to reasonable compensation as determined by the Commissioner of the Department of Administrative Services, however, no compensation for lost profits shall be allowed.

### Delivery

24. All products and equipment delivered must be new unless otherwise stated in the proposal specifications.

25. Delivery will be onto the specified State loading docks by the Contractor unless otherwise stated in the proposal specifications.

26. Deliveries are subject to re-weighing on State sealed scales.

27. Payment terms are net 45 days after receipt of goods or invoice, whichever is later, unless otherwise specified.

28. Charges against a Contractor shall be deducted from current obligations. Money paid to the State by the Contractor shall be payable to the Treasurer, State of Connecticut.

### Saving Clause

29. The Contractor shall not be liable for losses or delays in the fulfillment of the terms of the contract due to wars, acts of public enemies, strikes, fires, floods, acts of God or any other acts not within the control of or reasonably prevented by the Contractor. The Contractor will give written notice of the cause and probable duration of any such delay.

### Advertising

30. Contractors may not reference sales to the State for advertising and promotional purposes without the prior approval of Procurement Services.

### Rights

31. The State has sole and exclusive right and title to all printed material produced for the State and the contractor shall not copyright the printed matter produced under the contract.

32. The Contractor assigns to the State all rights title and interests in and to all causes of action it may have under Section 4 of the Clayton Act, 15 USC 15, or under Chapter 624 of the general statutes. This assignment occurs when the Contractor is awarded the contract.

33. Contractor agrees that it is in compliance with all applicable federal, state and local laws and regulations, including but not limited to Connecticut General Statutes Sections 4a-60 and 4a-60a. The Contractor also agrees that it will hold the State harmless and indemnify the State from any action which may arise out of any act by the contractor concerning lack of compliance with these laws and regulations. All purchases will be in compliance with Section 22a-194 to Section 22a-194g of the Connecticut General Statutes related to product packaging.

34. This contract is subject to the provisions of Executive Order No. Three of Governor Thomas J. Meskill promulgated June 16, 1971, the provisions of Executive Order No. Seventeen of Governor Thomas J. Meskill promulgated February 15, 1973 and section 16 of P.A. 91-58 nondiscrimination regarding sexual orientation, and the provisions of Executive Order No. Sixteen of Governor John G. Rowland promulgated August 4, 1999 regarding Violence in the Workplace Prevention Policy.

STANDARD RFP
TERMS AND CONDITIONS
RFP-19 Rev. 11/02
Prev. Rev. 04/02

**Julie Bernosky**
*Buyer Name*

**(860)713-5065**
*Buyer Phone Number*

# STATE OF CONNECTICUT
### *DEPARTMENT OF ADMINISTRATIVE SERVICES*
#### PROCUREMENT SERVICES
#### 165 Capitol Avenue, Room G-8A, Ground Floor
#### PO Box 150414
#### HARTFORD, CT 06115-0414

RFP NO.:
03PSX0378

## Standard Request for Proposal (RFP) and Contract Terms and Conditions - Page 3 of 3

### Records, Files, and Information

35. Incorporated by reference into this contract and Pursuant to Public Act No. 01-169, each contract in excess of two million five hundred thousand dollars between a public agency and a person for the performance of a governmental function shall (1) provide that the public agency is entitled to receive a copy of records and files related to the performance of the governmental function, and (2) indicate that such records and files are subject to the Freedom of Information Act and may be disclosed by the public agency pursuant to the Freedom of Information Act.

36. Incorporated by reference into this contract is Section 4-61dd(g)(1) and 4-61dd(3) and (f) of the Connecticut General Statutes which prohibits contractors from taking adverse action against employees who disclosed information to the Auditors of Public Accounts or the Attorney General.

### Health Insurance Portability and Accountability Act (HIPAA)

37. Under the Health Insurance Portability and Accountability Act (HIPAA) of 1996, Bidders are expected to adhere to the same standards as the state agency/covered entity as to Protected Health Information (PHI), to maintain compliance with Title 45 CFR Part 164.504, Uses and Disclosures: Organizational Requirements, Bidder Contracts. Protected Health Information (PHI) includes information related to claims, health services, federal and state tax information, financials, criminal/court related information and other personally identifiable records. Bidder agrees that it shall be prohibited from using or disclosing the PHI provided or made available by the state agency/covered entity or viewed while on the premises for any purpose other than as expressly permitted or required by this Contract. These uses and disclosures must be within the scope of the Bidder's services provided to the state agency/covered entity.  Bidders shall establish and maintain reasonable safeguards to prevent any use or disclosure of the PHI, other than as specified in this Contract or required by law. Bidder agrees that anytime PHI is provided or made available to any subcontractors or agents, Bidder must enter into a subcontract, which contains the same terms, conditions and restrictions on the use and disclosure of PHI as contained in this Contract. Bidder agrees to make available and provide a right of access to PHI by the individual for whom the information was created and disclosed. Bidder agrees to make information available as required to provide an accounting of disclosures. Bidder agrees to make its internal practices, books, and records relating to the use or disclosure of PHI received from, or created or received by Bidder on behalf of the state agency/covered entity, available to the Secretary of Health and Human Services (HHS) for purposes of determining compliance with the HHS Privacy Regulations. At termination of this Contract, Bidder agrees to return or destroy all PHI received from, or created by the state agency/covered entity. If not feasible, extend the protections of this agreement to the PHI and limit further uses and disclosures. Bidder will have procedures in place for mitigating any harmful effects from the use or disclosure of PHI in a manner contrary to this Contract or the HHS Privacy Regulations. Bidder must develop and implement a system of sanctions for any employee, subcontractor or agent who violates this Contract or the HHS Privacy Regulations. The PHI shall be and remain the resources of the state agency/covered entity. Bidder agrees that it acquires no title or rights to the information, including any de-identified information, as a result of this Contract. Bidder agrees that the state agency/covered entity has the right to immediately terminate this Contract if the state agency/covered entity determines that Bidder has violated a material term of this HIPAA Compliance Agreement above.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

This Agreement (the "Agreement") made as of the day of March 30, 2004 by and between, Lehigh Safety Shoe Co., LLC. (the "Contractor,") with a principal place of business at 120 Plaza Drive, Suite A, Vestal, NY 13850 acting by Paul J. DelRoso its Vice President/Chief Financial Officer and the State of Connecticut, Department of Administrative Services/Procurement (the "State"), with a principal place of business at 165 Capitol Avenue, Hartford, Connecticut, acting by Julie Bernosky, its Contract Specialist, in accordance with Sections 4a-2(2), 4a-51, 4a-57 and 4a-59 of the Connecticut General Statutes.

Now therefore, in consideration of the premises and mutual covenants and agreements set forth, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Contractor and the State agree as follows:

1. **Agreement Term:** The Agreement will be in effect from March 30, 2004 through January 31, 2008. The State reserves the right to extend this Agreement for a period up to the full original Agreement term or parts thereof.

2. **Description of Services:** The Contractor shall provide approved footwear as listed on the attached contract award schedule to the various Department of Corrections Staff. The procedure will be as follows: A Lehigh shoemobile will be on site for the DOC Staff to purchase their footwear. Posters would be submitted by Lehigh Safety Shoes to notify staff of when the shoemobile would be at their worksite. The staff will go into the shoemobile and show proper agency identification. The Lehigh Staff will check off the employee's name on an agency roster which will be provided by the DOC Business Office. Lehigh will have the proper shoes that the employee should have for their type of work. The employee will try on the shoes to make sure they are of the proper size. After this is completed the DOC employee will sign a triple receipt, one copy for employee, one copy for the DOC ghost account cardholder and one for the vendor. At this time Lehigh will submit individual transaction invoices for payments directly to the credit card company. The Dept. of Correction will then reconcile statements on a monthly basis. If after the employee gets the shoes and the next day does not feel they fit properly they will contact Lehigh to get the proper size. Employees also have the option of going to the Wallingford Walk In Center to purchase shoes or they may call toll free 1-800-489-9872 to place an order. Lehigh Safety Shoe Co., LLC shall work through the agency contact person to insure proper scheduling, background checks for Lehigh Employees and proper execution of the contract.

3. **Change of Address** - In the event either party moves or updates contact information, the moving party shall inform the other of such changes in writing within 10 days. The State will not be held responsible for payments or purchase orders delayed due to Contractor's failure to provide such notice. Change of address or telephone updates must be forwarded to each other as provided in Section 30. Change of address or telephone updates must be forwarded to: Department of Administrative Services, Procurement Services, 165 Capitol Avenue, Fifth Floor South, Hartford, CT 06106, Attn: Julie Bernosky.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

## 4. **Insurance** -

Contractor shall not commence work under this contract until he has obtained all insurance required under this Section, nor shall the Contractor allow any sub-contractor to commence work on his subcontract until all similar insurance required of the subcontractor has been obtained.

A) Commercial General Liability
$1,000,000 Combined Single Limit per occurrence for bodily injury, personal injury and property damage. Coverage shall include Premises and Operations, Independent Contractors, Products and Completed Operations, Contractual Liability and Board Form Property Damage coverage. If a general aggregate is used, the general aggregate limit shall apply either separately to the project or the general aggregate limit shall be twice the occurrence amount.

B) Workers' Compensation and Employers Liability
Statutory coverage in compliance with the Compensation laws of the State of Connecticut. Coverage shall include Employer's Liability with minimum limits of $100,000 each accident, $500,000 disease-policy limit, $100,000 each employee.

C) Automobile Liability
$1,000,000 Combined Single Limit Automobile Liability insurance shall be maintained against claims for damages resulting from bodily injury, including wrongful death, and property damage which may arise from the operations of any owned, hired or non-owned automobiles used by or for the Contractor in any capacity in connection with carrying out this contract.

D) Minimum Scope of Insurance
All Liability insurance policies shall be written on an "occurrence" basis only. All insurance coverage is to be placed with insurers authorized to do business in the State of Connecticut and must be placed with an insurer that has an A.M. Best's Rating of no less and A-, VII. All certificates of insurance shall be filed with the Department of Administrative Services on the standard Accord Certificate of Insurance form showing the specified insurance and limits. The State of Connecticut shall be named as an Additional Insured. The contractor's insurer shall have no right of recovery of subrogation against the State and the contractor's insurance shall be primary coverage.

5. **Agreement Prices and Billing:** Agreement Prices for services performed under this Agreement are shown in Exhibit A, Contract Award Schedule, which is attached to this Agreement. The State agrees to pay invoices on a net 45 day basis after receipt of invoice. The Contractor shall bill the State for the services provided. A late payment charge shall be calculated pursuant to section 4a-71 of the Connecticut General Statutes.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

6. **Audit**: At the option of the State and at its own expense, periodic audits may, at reasonable times, be made of the Contractor and all of its subcontractors' books and records insofar as they pertain to the Agreement. Such audits will be conducted by the State or a representative appointed by the State. Said books and records shall be made available to the Auditors of Public Accounts of the State of Connecticut.

7. **Reporting**: The Contractor shall provide detailed reports to the State on a monthly basis as requested. The State may reasonably request additional reports if needed and Lehigh Safety Shoe Co., LLC shall use every effort to provide such reports.

8. **Independent Contractor**: Contractor agrees to act as an independent contractor in performing all services under this Agreement and, except as otherwise outlined in this Agreement, agrees to maintain complete control over its employees.

9. **Entire Agreement** - The parties agree that this Agreement embodies the entire agreement between the State and Contractor on the matters specified herein, whether expressed or implied, written or oral. No changes, amendments or modifications of any of the terms or conditions of this Agreement are valid unless reduced to writing and signed by both parties. In the event the conflict or dispute is over issues not specifically addressed in this Agreement, the following documents are incorporated into this Agreement and will be used to resolve such conflicts or disputes in the following order of precedence:

    i. Exhibit A – Contract Award Schedule (pricing)
    ii. Exhibit B  - Form RFP-19 Standard Terms and Conditions
    iii. Exhibit C - The State's Request for Proposals dated November 5, 2003
    iv. Exhibit D - Contractor's Proposal Response dated December 2, 2003

10. **Severability**: If any provision of this Agreement is found by a proper authority to be invalid or unenforceable, the remainder of the Agreement shall remain valid and the invalid provision shall be replaced by a valid provision, which comes closest in intent to the invalid provision. The rest of the provisions shall remain in full force and effect.

11. **State Law**: Both Parties agree that it is fair and reasonable for the validity and construction of this Agreement to be, and it shall be, governed by the laws and court decisions of the State of Connecticut, without giving effect to its principles of conflicts of laws. Any dispute arising out of this Agreement shall be subject to the jurisdiction of the courts of the State of Connecticut and Contractor waives any objection which it may now have or will have to the laying of venue of any Claims in any forum and further irrevocably submits to the jurisdiction of any such court in any suit, action or proceeding.

12. **Transfer of Data**: Contractor shall return to the State all data stored in the Contractor's files, electronic, magnetic or hard copy, no later than ten days after the expiration of the Agreement.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

13. **State Fiscal and Product Performance Requirements**: Any product or service acquisition resulting from this Agreement shall be contingent upon contractual provisions for cancellation of such acquisition, without liability attaching to the State, if the applicable funds are not available for required payment or if the products or services fail to meet minimum State criteria for acceptance and performance reliability.

14. **Offer of Gratuities**: The Contractor warrants, represents, and certifies that no elected or appointed official or employee of the State of Connecticut has, or agrees to, benefit financially or materially from this procurement. This Agreement may be terminated by State without liability attaching to the State if it is determined that gratuities of any kind were either offered to, or received by, any of the aforementioned officials or employees from the Contractor, the Contractor's agent(s), representatives(s) or employees(s).

15. **Subletting or Assigning of Agreement**: The Agreement or any portion thereof, or the work provided for therein, or the right, title, or interest of the Contractor therein or thereto may not be sublet, sold, transferred, assigned or otherwise disposed of to any person, firm, or corporation, or other entity without the prior written consent of the State. No person, firm or corporation, or other entity, other than the Contractor to whom the project was awarded is permitted to commence work on the project unless such consent has been granted.

16. **Executive Orders:** The Contractor shall comply with the provisions of Executive Order No. Three of Governor Thomas J. Meskill, promulgated June 16, 1971, the provisions of Executive Order No. Seventeen of Governor Thomas J. Meskill, promulgated February 15, 1973 and the provisions of Executive Order No. Sixteen of Governor John G. Rowland promulgated August 4, 1999. The executive orders are incorporated by reference as if they had been fully set forth in this Agreement.

17. **Americans with Disabilities Act:** The Contractor shall comply with the Americans with Disabilities Act in accordance with Public Law 101-336 and any other applicable federal laws and regulations.

18. **State Access to Records, Record Keeping, and Record Transfer**: The Contractor shall prepare, maintain and preserve all records with respect to the administration of this Agreement. During the term of the Agreement the State shall have access during normal business hours to all such records, in whatever form they exist or are stored, which records agrees to be the property of the State, and upon termination of the Agreement, all such records, or exact copies thereof, agrees to be immediately turned over in its entirety to the State. Contractor shall afford the officers, attorneys, accountants, auditors, and other authorized representatives of the State free and full access to the records to be maintained by the Contractor as pertains to the Agreement.

19. **Confidentiality and Care of Data**: The Contractor shall protect the confidentiality of any files, data or other material pertaining to this Agreement and to restrict their use solely for the purpose of performing this Agreement. The Contractor agrees to take all steps necessary to safeguard data, files, reports or other information from loss, destruction or erasure. Any costs or expenses of replacing or damages resulting from the loss of such data will be borne by the Contractor when such loss or damage occurred through their negligence.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

**20. <u>Termination</u>:**

A.    Notwithstanding any provision or language in the Agreement, the State, after discussion with Contractor, may suspend, postpone, abandon or terminate this Agreement whenever the State determines in the State's sole discretion that such termination is in the best interests of the State. Any such written notice of termination shall specify the effective date of termination and the extent to which performance under the Agreement is to be completed prior to such date. Termination in the best interests of the State shall in no event be deemed to be a breach of contract. Upon receipt of written notification from the State that this Agreement is to be terminated, Contractor shall immediately cease operations on work being performed under this Agreement and shall assemble all material that has been prepared, developed, furnished or otherwise obtained under the terms of this Agreement in whatever form it is stored. Said material shall include but not be limited to documents, plans, computations, drawings, notes, records and correspondence, except for such documents, plans, and records which would be deemed the sole propriety of Contractor. The State shall review this material and determine the amount of acceptable work performed under the terms of this Agreement. The State shall pay Contractor for such work on an equitable basis, after discussions with Contractor, with the final determination to be made by the State. In determining the basis for such equitable payments, the State shall consider the amount of:

(1)    work performed by Contractor, less any payments previously made, and

(2)    allowable reimbursement expenses incurred by Contractor, less any payments previously made.

b.    If either party breaches this Agreement in any respect, the non-breaching party shall provide written notice of such breach to the breaching party and afford the breaching party an opportunity to cure the breach within ten (10) days from the date that the breaching party receives such notice. The notice may include an effective termination date if the breach is not cured by that date and, unless otherwise modified by the non-breaching party in writing prior to the termination date, no further action shall be required of any party to effect the termination as of the stated date. If the notice does not set forth an effective termination date, then the non-breaching party may terminate this Agreement by giving the breaching party no less than twenty four (24) hours' written notice.

c.    Upon termination of this Agreement, all rights, duties and obligations hereunder shall be null and void, so that no party shall have any further rights, duties or obligations to any other, except with respect to Sections 11, 12, 18, 19, 24, 25, 27, 28 and 29, which shall survive termination of this Agreement.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

21. **Payments Against a Contract Award**:  In no case, will the Contractor bill the user agencies for amounts in excess of the amount(s) indicated in the final Contract Award Schedule agreed to and accepted by both parties through this Agreement.  Any authorized or agreed additional charges can only be approved for payment by means of an amendment to this Agreement in accordance with section 9, above.

22. **Day:** The word "day" as used in this Agreement shall mean a business day, unless otherwise specifically noted, with business days being all calendar days other than Saturdays, Sundays and days designated as national or State of Connecticut holidays upon which banks in Connecticut are closed.

23. **Headings:** The headings given to the paragraphs in this Agreement are inserted only for convenience and are in no way to be construed as part of this Agreement or as a limitation of the scope of the particular paragraph to which the heading refers.

24. **Indemnification:** Contractor shall indemnify, defend and hold harmless the State and its successors and assigns from and against any and all (1) actions, suits, claims, demands, investigations and legal, administrative or arbitration proceedings pending or threatened, whether mature, unmatured, contingent, known or unknown, at law or in equity, in any forum (collectively, "Claims") arising, directly or indirectly, in connection with this Agreement including, but not limited to, acts of commission or omission (collectively, the "Acts") by the Contractor or any of its members, directors, officers, shareholders,  or employees or any other person or entity (except for a Vendor Network entity) with whom the Contractor is in privity of oral or written contract (collectively, "Contractor Parties");  (2) liabilities arising, directly or indirectly, in connection with this Agreement, out of the Contractor's or Contractor Parties' Acts concerning its or their duties and obligations as set forth in this Agreement;  and (3) all damages, losses, costs and expenses, including but not limited to, attorneys' and other professionals' fees, that may arise out of such Claims and/or liabilities for bodily injury, death and/or property damages.  The Contractor shall reimburse the State, for any and all damages to the real or personal property of the State caused by the Acts of the Contractor or any Contractor Parties.  The State shall give to the Contractor reasonable notice of any such Claim.  The Contractor shall also use counsel reasonably acceptable to the State in carrying out its obligations hereunder.  The provisions of this Section shall survive the expiration or early termination of this Agreement, and shall not be limited by reason of any insurance coverage.

25. **Interpretation:**  This Agreement shall be interpreted without regard to any presumption or other rule requiring construction against the party who drafted this Agreement.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

26. **Promotion:** Unless specifically authorized in writing by the State, Contractor shall have no right to use, and shall not use, the name of the State of Connecticut, its officials or employees, or the seal of the State:

    (a) in any advertising, publicity, promotion;

    (b) to express or imply any endorsement by the State of Contractor's product or services; or

    (c) in any manner (whether or not similar to uses prohibited by (a) and (b) above) except only to produce and deliver in accordance with this Agreement

27. **Representations and Warranties:** Contractor represents and warrants to the State that:

A. it is a duly and validly existing Corporation under the laws of the State of Connecticut and authorized to conduct its business in the State of Connecticut in the manner contemplated by this Agreement. Further, Contractor has taken all necessary action to authorize the execution, delivery and performance of this Agreement and has the power and authority to execute, deliver and perform its obligations under this Agreement;

B. it will comply with all applicable State and Federal laws and municipal ordinances in satisfying its obligations to the State under and pursuant to this Agreement;

C. the execution, delivery and performance of this Agreement by Contractor will not violate, be in conflict with, result in a breach of or constitute (with or without due notice and/or lapse of time) a default under any of the following, as applicable: (i) any provision of law; (ii) any order of any court or any governmental department, commission, board, bureau, agency, office, council, institution or instrumentality (collectively, "Agencies"); or (iii) any indenture, agreement, document or other instrument to which it is a party or by which it may be bound;

D. it is not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal or State department or agency;

E. neither it nor any of its members, directors, officers, shareholders, partners, managers, principal officers, or employees have, within the three years preceding this Agreement, been convicted of, or had a civil judgment rendered against it or any of its current partners, managers, principal officers or any person who would perform any Public Accountancy services, for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract. This includes, but is not limited to, violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

F. neither it nor any of its members, directors, officers, shareholders, partners, managers, principal officers, or employees nor any person who would perform any services under this Agreement, is presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated above;

G. it has not within the three years preceding this Agreement had one or more public transactions (Federal, State or local) terminated for cause or default;

H. it shall include the following provision in each subcontract Agreement to which it is or may be a party in connection with this Agreement and to require that provision to be included in any lower tier subcontracts and purchase orders:
   The [INSERT NAME OF SUB- OR LOWER TIER SUBCONTRACTOR] certifies, by submission of this proposal, that neither it nor its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal or State department or agency;

I. is in compliance with all of the requirements necessary to the obtaining of a current Certificate of Good Standing or Legal Existence issued by the Connecticut Secretary of State;

J. it has paid all workers' compensation second injury fund assessments concerning all previous work done in Connecticut;

K. it has a record of compliance with OSHA regulations without any unabated, willful or serious violations;

L. it owes no unemployment compensation contributions;

M. it is not delinquent in the payment of any taxes owed, or that it has filed a sales tax security bond, and it has, if and as applicable, filed for motor carrier road tax stickers and has paid all outstanding road taxes; and

N. all of its vehicles have current registrations and, unless such vehicles are no longer in service, it shall not allow any such registrations to lapse

28. **Sovereign Immunity:** The parties acknowledge and agree that nothing in this Agreement shall be construed as a waiver by the State of any rights or defenses of sovereign immunity, which it may have had, now has or will have with respect to all matters arising out of this Agreement. To the extent that this provision conflicts with any other provision, this provision shall govern.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

**29. Notice.**  All notices, demands, requests, consents, approvals or other communications (for the purpose of this section collectively called "Notices") required or permitted to be given or which are given with respect to this Agreement shall be in writing and shall be sent by first class U.S. Mail, postage prepaid, by hand delivery or by recognized, overnight express delivery service, addressed as follows:

    To:
    Connecticut Department of Administrative Services
    165 Capitol Avenue, Hartford, CT  06115-0414
    Attention:  Julie Bernosky, Procurement Services

    To the Contractor:

    Lehigh Safety Shoe Co., LLC
    120 Plaza Drive, Suite A
    Vestal, NY  13850
    Attention:  Stephen Drapp Jr.

**30.  Whistleblowing.**  This contract is subject to the provisions of §4-61dd of the Connecticut General Statutes.  In accordance with this section any person having knowledge of any matter involving corruption, violation of state or federal laws or regulations, gross waste of funds, abuse of authority or danger to the public safety occurring in any large state contract, may transmit all facts and information in his possession concerning such matter to the Auditors of Public Accounts. In accordance with subsection (e) if an officer, employee or appointing authority of a large state contractor takes or threatens to take any personnel action against any employee of the contractor in retaliation for such employee's disclosure of information to the Auditors of Public Accounts or the Attorney General under the provisions of this section, the contractor shall be liable for a civil penalty of not more than five thousand dollars for each offense, up to a maximum of twenty per cent of the value of the contract.  Each violation shall be a separate and distinct offense and in the case of a continuing violation each calendar day's continuance of the violation shall be deemed to be a separate and distinct offense.  The executive head of the state or quasi- public agency may request the Attorney General to bring a civil action in the Superior Court for the Judicial District of Hartford to seek imposition and recovery of such civil penalty.  In accordance with subsection (f) each large state contractor shall post a notice of the provisions of this section relating to large state contractors in a conspicuous place which is readily available for viewing by the employees of the contractor.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

**31. Public Records.** This contract is subject to the provisions of §1-218 of the Connecticut General Statutes. In accordance with this section, each contract in excess of two million five hundred thousand dollars between a public agency and a person for the performance of a governmental function shall (1) provide that the public agency is entitled to receive a copy of records and files related to the performance of the governmental function, and (2) indicate that such records and files are subject to the Freedom of Information Act and may be disclosed by the public agency pursuant to the Freedom of Information Act. No request to inspect or copy such records or files shall be valid unless the request is made to the public agency in accordance with the Freedom of Information Act. Any complaint by a person who is denied the right to inspect or copy such records or files shall be brought to the Freedom of Information Commission in accordance with the provisions of sections 1-205 and 1-206 of the Connecticut General Statutes.

**32. Further Assurances.** The parties shall provide such information, execute and deliver any instruments and documents and take such other actions as may be necessary or reasonably requested by the other parties which are not inconsistent with the provision of this Agreement and which do not involve the assumption of obligations other than those provided for in this Agreement, in order to give full effect to this Agreement and to carry out the intent of this Agreement.

**33. Non-discrimination.** References in this section to "contract" shall mean this Agreement and references to "contractor" shall mean the Contractor. This section is inserted in this contract in connection with subsection (a) of Section 4a-60a of the Connecticut General Statutes.

a. The contractor agrees and warrants that in the performance of the contract such contractor will not discriminate or permit discrimination against any person or group of persons on the grounds of sexual orientation, in any manner prohibited by the laws of the United States or of the State of Connecticut, and that employees are treated when employed without regard to their sexual orientation; (2) the contractor agrees to provide each labor union or representative of workers with which such contractor has a collective bargaining agreement or other contract or understanding and each vendor with which such contractor has a contract or understanding, a notice to be provided by the Commission on Human Rights and Opportunities advising the labor union or workers' representative of the contractor's commitments under the this section, and to post copies of the notice in conspicuous places available to employees and applicants for employment; (3) the contractor agrees to comply with each provision of this section and with each regulation or relevant order issued by said Commission pursuant to Section 46a-56; (4) the contractor agrees to provide the Commission on Human Rights and Opportunities with such information requested by the Commission, and permit access to pertinent books, records and accounts concerning the employment practices and procedures of the contractor which relate to this provisions of this section and Section 46a-56.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

b.  The contractor shall include the provisions of subsection (a) of this section in every subcontract or purchase order entered into in order to fulfill any obligation of a contract with the state and such provisions shall be binding on a subcontractor, vendor or manufacturer unless exempted by regulations or orders of the Commission.

c.  The contractor shall take such action with respect to any such subcontract or purchase order as the Commission may direct as a means of enforcing such provisions, including sanctions for noncompliance in accordance with Section 46a-56; provided, if such contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the Commission, the contractor may request the State of Connecticut to enter into any such litigation or negotiation prior thereto to protect the interests of the state and the state may so enter.

(2) The contractor agrees to comply with the regulations referred to in this section as they exist on the date of this contract and as they may be adopted or amended from time to time during the terms of this contract and any amendments thereto.

The following section is inserted in this contract in connection with subsection (a) of Section 4a-60 of the Connecticut General Statutes.

(1)  The contractor agrees and warrants that in the performance of the contract such contractor will not discriminate or permit discrimination against any person or group of persons on the grounds of race, color, religious creed, age, marital status, national origin, ancestry, sex, mental retardation or physical disability, including, but not limited to, blindness, unless it is shown by such contractor that such disability prevents performance of the work involved, in any manner prohibited by the laws of the United States or of the State of Connecticut. The contractor further agrees to take affirmative action to ensure that applicants with job-related qualifications are employed and that employees are treated when employed without regard to their race, color, religious creed, age, marital status, national origin, ancestry, sex, mental retardation or physical disability, including, but not limited to, blindness, unless it is shown by such contractor that such disability prevents performance of the work involved; (2) the contractor agrees, in all solicitations or advertisements for employees placed by or on behalf of the contractor, to state that it is an "affirmative action-equal opportunity employer" in accordance with regulations adopted by the Commission; (3) the contractor agrees to provide each labor union or representative of workers with which such contractor has a collective bargaining agreement or other contract or understanding and each vendor with which such contractor has a contract or understanding, a notice to be provided by the Commission advising the labor union or workers' representative of the contractor's commitments under this section, and to post copies of the notice in conspicuous places available to employees and applicants for employment; (4) the contractor agrees to comply with each provision of this section and Sections 46-68e and 46a-68f and with each regulation or relevant order issued by said Commission pursuant to Sections 46a-56, 46a-68e and 46a-68f; (5) the contractor agrees to provide the Commission on Human Rights and Opportunities with

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

such information requested by the Commission, and permit access to pertinent books, records and accounts, concerning the employment practices and procedures of the contractor as relate to the provisions of this section and Section 46a-56.

If the contract is a public works contract, the contractor agrees and warrants that he will make good faith efforts to employ minority business enterprises as subcontractors and suppliers of materials on such public works project.

For purposes of this section, "minority business enterprise" means any small contractor or supplier of materials fifty-one percent or more of the capital stock, if any, or assets of which is owned by a person or persons: (1) who are active in the daily affairs of the enterprise, (2) who have the power to direct the management and policies of the enterprise, and (3) who are members of a minority, as such term is defined in subsection (a) of Section 32-9n; and "good faith" means that degree of diligence which a reasonable person would exercise in the performance of legal duties and obligations. "Good faith efforts" shall include, but not be limited to, those reasonable initial efforts necessary to comply with statutory or regulatory requirements and additional or substituted efforts when it is determined that such initial efforts will not be sufficient to comply with such requirements.

Determination of the contractor's good faith efforts shall include, but shall not be limited to, the following factors: The contractor's employment and subcontracting policies, patterns and practices; affirmative advertising, recruitment and training; technical assistance activities and such other reasonable activities or efforts as the Commission may prescribe that are designed to ensure the participation of minority business enterprises in public works projects.

The contractor shall develop and maintain adequate documentation, in a manner prescribed by the Commission, of its good faith efforts.

The contractor shall include the provisions of subsection (a) of this section in every subcontract or purchase order entered into in order to fulfill any obligation of a contract with the state and such provisions shall be binding on a subcontractor, vendor or manufacturer unless exempted by regulations or orders of the Commission. The contractor shall take such action with respect to any such subcontract or purchase order as the Commission may direct as a means of enforcing such provisions, including sanctions for noncompliance in accordance with Section 46a-56; provided, if such a contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the Commission, the contractor may request the State of Connecticut to enter into any such litigation or negotiation prior thereto to protect the interests of the state and the state may so enter.

The contractor agrees to comply with the regulations referred to in this section as they exist on the date of this contract and as they may be adopted or amended from time to time during the term of this contract and any amendments thereto.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

**34. Quantities and/or Usages**

There are approximately 5,500 uniformed staff (employees) eligible for this footwear program. The composite mix of staff is estimated at 80% male and 20% female, plus it is estimated that we will have four (4) graduating DOC academy classes, of approximately 100-200 cadets per class, per year, who shall be eligible for footwear throughout the contract term. Actual quantities may vary. These are only estimated quantities only and in no way represent a commitment and/or intent to purchase.

**35. Contract Separately / Additional Savings Opportunities**

The State reserves the right to either seek additional discounts from the contractor(s) or to contract separately for a single purchase, if in the judgment of DAS/Procurement Services, the quantity required is sufficiently large, to enable the State to realize a cost savings, over and above the published contract prices, whether or not such a savings actually occurs.

**36. P-Card (Purchasing Credit Card)**

The State of Connecticut uses a Mastercard purchasing card for order placement and payment in many instances. Suppliers who accept credit cards should anticipate that some or all orders issued as a result of this request for proposal may be paid by using the purchasing card. The Supplier shall be aware that he/she is responsible for the credit card user handling fee associated with credit card purchases. Suppliers should only charge to the State's Mastercard when the goods are delivered (physical receipt of goods, at store), or are shipped.

Questions regarding the State of Connecticut Mastercard Program should be directed to Ms. Kerry DiMatteo, Procurement Card Program Administrator at (860) 713-5072.

**37. E-Commerce (Electronic Commerce)**

On July 1, 2003, the State of Connecticut began to utilize PeopleSoft's internet-based E-Procurement ordering system, known as Core-CT. With Core-CT, purchase orders are electronically transmitted or faxed to the vendor.

Companies receiving awards from this bid/proposal will be _required_ to use this service or any updated and/or replacement service designated by the State during the contract term to receive orders from the State of Connecticut. Companies that do not and/or cannot comply with our E-Commerce requirements when required, and/or fail to provide functional data files within a reasonable amount of time (as specified by the State) may be terminated from a contract award.

Requirements for this service include but are not limited to:

    a.  Applicable fees
    b.  Data Formatting Requirements

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

For further information regarding requirements concerning this service, please contact the State's Core-CT Catalog Management Team, at catalog.management@po.state.ct.us PRIOR TO YOUR BID/PROPOSAL SUBMISSION. Technical questions regarding this service may also be faxed to John Pacholski at 860-622-2918.

    a) For additional detailed information on PeopleSoft Core-CT please go to http://www.das.state.ct.us/Purchase/Info/supplier_kit.asp .

In your bid/rfp response, Suppliers must provide a "technical" contact person (including name, phone, fax, e-mail address) with whom the State can work with in setting up the data files.

38.   **Open Enrollment**

This is an open enrollment contract. After the initial deadline date of December 2, 2003, of this RFP (Request for Proposal) additional proposers may submit a response to the RFP only as requested by DAS/Procurement Services.

However, all proposers are encouraged to meet the December 2, 2003 deadline, since vendors will NOT be permitted to submit random proposals at their own discretion at any time to DAS/Procurement Services.

DAS/Procurement Services will only add qualified contractors, after a thorough proposal review, to the contract once in place, to cover any unmet need(s).

39.   **Security**

Contractor must adhere to established security and/or property entrance policies and procedures established for each requesting State Entity. It is the responsibility of each contractor to understand and adhere to those policies and procedures prior to any attempt to enter the premises. (SEE SPECIAL SECURITY PROCEDURES (Attachment A) FOR THE DEPARTMENT OF CORRECTION WHICH ARE ATTACHED).

40.  **Price Increases**

Pricing shall remain firm for the first year of the contract. Price escalation will be limited to one (1) escalation charge on the manufacturers product line on the anniversary date of the contract regardless of the number of times the manufacturer increases their price. Price escalation after the original product line bid shall be at the manufacturing cost or production cost level only.

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

The awarded vendor must provide proof of the manufacturing cost increase. Increases will be limited to actual cost increases with no additional margin of profit. The Contractor must submit a formal request for an increase 30-60 days prior to contract anniversary date to: J. Bernosky, Contract Specialist, DAS/Procurement Services, PO Box 150414, Hartford, CT 06115-0414. The request shall contain the date the increase takes effect. No retroactive increases will be allowed. Any purchase orders issued by any State agency prior to the effective date will be honored by the Contractor at the price in effect at the time of the issuance of the purchase order. No increases are in effect until/unless approved by the State of Connecticut.

**NEW PRICING MEDIUM MUST BE SENT IN WITH THE REQUEST FOR INCREASE.** The State reserves the right to reject any requested price increase deemed excessive in the opinion of the State. Purchase orders issued by DOC will be honored by the Contractor at the price in effect at the time the purchase order is issued.

41. Contractor agrees to offer each employee one additional pair of shoes/boots (per year) at the contracted rate during the contract term. Payment for the additional pair of boots or shoes shall be the responsibility of the individual staff member. DOC will not assume responsibility in any way for the additional purchased pair. If delivery arrangements are needed for shoes/boots they must be coordinated with the contractor and the employee **(shoe boot delivery will not be accepted at DOC facilities).**

42. **Returns**

If after receiving the shoes via phone order and they do not fit the Contractor shall absorb any additional cost involved with returns and exchanges..

Contract #03PSX0378 Lehigh Safety Shoe Co., LLC

IN WITNESS WHEREOF, the parties hereto by their duly authorized representatives have executed this Agreement with full knowledge of and agreement with the terms and conditions of this Agreement.

LEHIGH SAFETY SHOE CO., LLC

By: _____

_____
(Print or Type Name)

Title: _____

Date: _____


STATE OF CONNECTICUT
DEPARTMENT OF
ADMINISTRATIVE SERVICES

By: _____

_____
(Print or Type Name)

Title: _____

Date: _____


Approved:
ATTORNEY GENERAL


_____
By: William B. Gundling
Its: Associate Attorney General
Date _____



ALL-STATE® LEGAL 800-222-0510   &051!   RECYCLED

## INDEPENDENT SALES REPRESENTATIVE AGREEMENT

This Independent Sales Representative Agreement (this "Agreement") is effective on July 1, 2001 (the "Effective Date") and is between **The Original Footwear Company** ("Original"), the address of which is Suite B, 4901 Cloutier Drive, Salida, California 95368 and the person / entity Bill Edwards. (the "Representative").

Whereas, Original is in the business of manufacturing Original S.W.A.T.™ footwear; and

Whereas, the Representative is in the business of independent representation of manufacturers such as Original; and

Whereas, Original has agreed to utilize the services of the Representative as an independent sales representative to act in good faith in representing Original S.W.A.T.™ footwear in the "Territory" (as defined below);

Now, therefore, for and in consideration of the respective promises of Original and the Representative contained in this Agreement, Original and the Representative agree as follows:

**Term And Termination.** This Agreement shall commence on the Effective Date and continue thereafter until terminated by either Original or the Representative giving thirty (30) days written notice to the other.

**The "Territory".** The Representative shall be responsible for promoting and marketing Original S.W.A.T.™ footwear for a territory consisting of: Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island & Vermont.

**Commission.** Original shall pay to the Representative a commission on all sales of Original S.W.A.T.™ footwear in the Territory at a rate of ten percent (10%) on all orders sold at the full wholesale price thereof. A reduced commission as published by Original will be payable on all orders of Original S.W.A.T.™ footwear sold at less than the full wholesale price thereof. Commissions due to the Representative will be paid monthly on or before the 15th of the month following the month of shipment of Original S.W.A.T.™ footwear sold by the Representative. However, if an outstanding account balance exceeds one hundred twenty (120) days, an amount equal to commissions paid for prior sales will be deducted from the current commissions due to the Representative and put into a suspension account until resolution of the outstanding debt is made.

**Expenses.** The Representative, being an independent sales representative, is responsible for all expenses incurred by the Representative in promoting and marketing Original S.W.A.T.™ footwear throughout the Territory. Original will pay to the Representative those expenses mutually agreed upon in writing in advance by Original and the Representative for expenses incurred by the Representative outside of the Territory while representing Original (*e.g.*, national exhibits).

**Communication.** The Representative shall comply with all reasonable requests of Original to provide to Original feedback on the marketing and sales of Original S.W.A.T.™ footwear in the Territory.

**Samples And Materials.** Original will provide to the Representative at no cost a reasonable number of representative samples, "try-on" samples, agency samples (to be returned), and wear test samples (not to be returned), all of which are to be utilized by the Representative for marketing purposes. Original will provide to the Representative at no cost advertising material (catalogues, flyers, *et cetera*).

**Absence Of Benefits.** Original offers no benefits of any nature whatsoever to the Representative.

**Miscellaneous.** Each notice or other communication permitted or required to be given under this Agreement (a "Notice") shall be in writing and executed by the party giving such Notice. Every Notice shall be delivered by postage prepaid first class, certified United States of America mail that provides a receipt to the address of the addressee appearing in this Agreement or to a substitute address for which a Notice was given. This Agreement constitutes the full and entire understanding and agreement between Original and the Representative. The Representative acknowledges and agrees that neither Original or any person acting on behalf of Original has induced the Representative to enter into this Agreement based upon any fact, statement or assertion that is not contained within this Agreement. The laws of the State of California applicable to contracts, transactions, and obligations entered into and to be performed in the State of California are hereby chosen (choice of law) to govern, enforce, determine, and construe this Agreement and the legality, validity, and performance of the terms, conditions, covenants, provisions, and restrictions of this Agreement.

The Original Footwear Company

[Signature]

Terry Mackness, Chief Executive Officer / President

[Signature]

Bill Edwards, 173 Vine Rock Street, Dedham, MA 02026

.ORIGINAL.ISR