## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 JAN 28  A 11: 45

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| WILLIAM J. EDWARDS,<br>    **Plaintiff**<br><br>    **v.**<br><br>THE ORIGINAL FOOTWEAR COMPANY,<br>    **Defendant** | **Civil Action**<br>**No. 04-12593-RGS** |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The plaintiff, William J. Edwards ("Edwards"), hereby submits this memorandum of law in support of its opposition to the motion to dismiss filed by defendant, Original Footwear Company ("Original"). As grounds for this opposition, Edwards states that the defendant is subject to personal jurisdiction in the Commonwealth of Massachusetts due to its act of contracting with a Massachusetts party and actively seeking to expand its product lines into the Massachusetts market through Edwards as a sales representative. Original has had numerous contacts with this forum, including sending a Vice President to Massachusetts for a week-long sales and training trip. For these reasons, this Court has jurisdiction over the defendant pursuant to the laws of the Commonwealth and the United States Constitution.

## FACTS

Edwards is a resident of the Commonwealth of Massachusetts, residing at 173 Vine Rock Street in Dedham, Massachusetts. *See* Complaint ¶ 1. He works as an independent manufacturer's representative, primarily in the law enforcement apparel and accessories business.

*See* Affidavit of William J. Edwards ("Edwards Aff."), ¶ 1. Over the years as an independent manufacturer's representative, Edwards has built an active network of contacts in the industry, primarily in Massachusetts. Edwards Aff. ¶ 1.

On July 1, 2001, Edwards and Original entered into an Independent Sales Representative Agreement ("Agreement"). Edwards Aff. ¶ 3. Under the Agreement, Edwards was to receive a 10% commission on all sales of Original S.W.A.T. boots in his territory of Massachusetts, Connecticut, Maine, New Hampshire, Rhode Island and Vermont. Edwards Aff. ¶ 5. He negotiated and signed the Agreement in Massachusetts. Edwards Aff. ¶ 3.

Before the signing of the Agreement in 2001, Original's sales in Massachusetts were a total of $315.00, with one distributor and a single sale. Edwards Aff. ¶ 4. Given this poor market condition in Massachusetts, and New England as a whole, it was Original's firm desire to create and foster a strong presence for its S.W.A.T. footwear in the law enforcement market there. Edwards Aff. ¶ 2. To that end, Edwards began to solicit sales for Original products within his established network of dealers. Edwards Aff. ¶ 4.

In 2001, Thomas Carson ("Carson"), Original's Senior Vice President and Sales Manager, traveled to Massachusetts to accompany Edwards on sales calls where they would "pitch" the product to dealers. Edwards Aff. ¶ 11. On that sales trip, it was Edwards' job to introduce Carson to his many Massachusetts contacts and Carson's job to describe the product to the dealer. Edwards Aff. ¶ 13. During the week the two visited many of Edwards' Massachusetts contacts including, but not limited to: Andrea's Police Supply in Raynam, MA, Triple A Police Supply in Dedham, MA, Trippi's Uniforms in Shrewsbury, MA, Simon's Uniforms in Lynn, MA, Dough Boy Police Supply in Revere, MA, Ben's Uniforms in Amesbury, MA, Community Fire in Oxford, MA, Century Uniform in Chicopee, MA, Police Survival

2

Equipment in Billerica, MA. Edwards Aff. ¶ 12. By the end of the week, Carson and Edwards

had sold in excess of $65,000.00 worth of Original boots to the dealers they visited. Edwards

Aff. ¶ 13.

By now comfortable with the Original product line, Edwards continued to solicit sales for

Original S.W.A.T. footwear in his territory. Edwards Aff. ¶ 14. In 2003, Edwards facilitated a

lucrative contract for Original footwear to be purchased by the Connecticut Department of

Corrections ("CDC"). Edwards Aff. ¶ 6. This contract was worth $1,500,000.00. Edwards Aff.

¶ 6.

The genesis of the contract was with Edwards asking Carson if he had given any "wear

test" boots to the CDC on a Maryland sales exposition trip in 2003. Edwards Aff. ¶ 6. Carson

told him that he was not certain, he had handed out a lot of product. Edwards Aff. ¶ 6. Edwards

stressed to Carson that the CDC was interested in the S.W.A.T. boot and needed some samples.

Edwards Aff. ¶ 6. Soon thereafter, Edwards traveled from his office in Massachusetts to the

CDC facility and met with the Chief of Tactical Operations, Major Bruce E. Bussiere. Edwards

Aff. ¶ 6. Edwards pitched the product and the Major agreed to accept several "wear test"

samples. Edwards Aff. ¶ 6. From Massachusetts, Edwards arranged for several "wear test"

boots to be ordered and shipped to the CDC. Edwards Aff. ¶ 6. The CDC liked the boots and

wanted to order a large quantity of them. Edwards Aff. ¶ 6. Edwards arranged for Horowitz

Career Apparel and Uniforms of West Haven, CT to service the contract as the distributor.

Edwards Aff. ¶ 7.

Without notifying Edwards, Original had the contract funneled to another distributor,

Lehigh Safety Shoe Company, LLC of Vestal, NY. Edwards Aff. ¶ 8. On information and

belief, this was done in an attempt to avoid paying Edwards his commission on the sales he

generated. Edwards Aff. ¶ 8. Even though the Connecticut Department of Corrections was in Edwards' territory, as was the distributor he had arranged to service the contract, the defendant has refused to pay Edwards the 10% commission due on the contract, claiming the sales were out of his territory. Edwards Aff. ¶ 8.

During the approximately three years that Carson and Edwards were working together at Original, Edwards was in constant contact with the home office in California. Edwards Aff. ¶ 16. Edwards would often talk to Carson 2-3 times a day. Edwards Aff. ¶ 16. The phone calls would encompass all manner of topic including: questions about products, proper marketing and promotion of Original products in Massachusetts and the rest of Edwards' territory, lead times on delivery and orders to be filled. Edwards Aff. ¶ 16. Edwards would also call a salesman named Todd Dunaway in the home office in California, as well as people in the California office who took the orders. Edwards Aff. ¶ 16. Occasionally, Edwards would speak with Terry Mackness, as well. Edwards Aff. ¶ 16. During this time, Carson and others in the California office would send Edwards letters of instruction and encouragement, along with marketing and promotion materials to disseminate in his territory. Edwards Aff. ¶ 17, 18. Edwards would also fax the home office orders for Original footwear from the Massachusetts dealers. Edwards Aff. ¶ 17.

Despite this dispute, Edwards continues to market Original footwear in his territory to this day. Edwards Aff. ¶ 15. Most of his sales stops are still in Massachusetts. Edwards Aff. ¶ 15. He continues to market and promote Original footwear in Massachusetts and continues to have contact with the home office in California. Edwards Aff. ¶ 18. This includes taking the actual boots to trade shows in Massachusetts and putting them on the display table while "pitching" the product. Edwards Aff. ¶ 18. Edwards also gives constant demonstrations to "end users" in public safety departments by showing the products directly to fire, police and EMS

4

departments. Edwards Aff. ¶ 18. In this capacity, Edwards hands out "wear test" samples for law enforcement personnel to try out the Original product. Edwards Aff. ¶ 19. He recently gave 15-20 pair of "wear test" samples to the Massachusetts Department of Corrections, alone. Edwards Aff. ¶ 19. The Massachusetts Department of Corrections Tactical Team still buys Original Footwear from an account that Edwards services. Edwards Aff. ¶ 19. Original continues to give Edwards marketing and promoting literature to display and disperse in Massachusetts, their goal still being to foster a strong presence in the Massachusetts market. Edwards Aff. ¶ 18.

Original directly solicits sales in Massachusetts from its home office in California. *See* Affidavit of Terry Mackness ("Mackness Aff.") ¶ 14. It solicits these sales via advertising materials sent to Massachusetts customers and distributors who have bought their products in the past. Mackness Aff. ¶ 14. Original receives orders via telephone, mail and facsimile directly from Massachusetts customers as well as through regional sales representatives, like Edwards. Mackness Aff. ¶ 12. Original also openly solicits Massachusetts business via their web site. See attached as "Exhibit A." The site has testimonials from three Massachusetts residents who have worn the boots that Original manufactures and endorse the product. Edwards Aff. ¶ 20. They are Capt. Lisa Young from Ludlow, Massachusetts; Kurt Hawes from Attleboro, Massachusetts; and Colin Mak from Boston, MA. Edwards Aff. ¶ 20.

There are currently more than twenty (20) dealers selling Original Footwear all over Massachusetts. Edwards Aff. ¶ 21. In fact, a Massachusetts distributor (Andrea's) holds a coveted Massachusetts State Contract for Original S.W.A.T. boots. Edwards Aff. ¶ 19. During the years 2000-2004, Original had sales in MA of approximately $222,249.00. Mackness Aff. ¶

12. At this time, in recognition of Original's goal set forth in 2001, Original Footwear's products are readily available all over Massachusetts. Edwards Aff. ¶ 21.

## ARGUMENT

"The proper exercise of specific *in personam* jurisdiction hinges on satisfaction of two requirements: first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to said statute comports with the strictures of the Constitution." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). As both requirements are satisfied here, this Court has personal jurisdiction over the defendant and its motion to dismiss should be denied.[1]

As the Supreme Judicial Court of Massachusetts has interpreted the Massachusetts long-arm statute (Mass. Gen. Laws ch. 223A, § 3) "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States," see "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441, 443 (1972), this court may proceed directly to the constitutional inquiry. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

The Due Process Clause of the United States Constitution requires that there be sufficient minimum contacts between a defendant and a forum in order for a court to exercise personal jurisdiction. See Fairview Mach. & Tool Co. v. Oakbrook Inter., 56 F. Supp. 2d 134, 138 (D. Mass. 1999). This analysis includes three factors:

1) The plaintiff's claims must relate to the defendant's Massachusetts contacts;

---

[1] In the event that the Court is inclined to grant the defendant's motion, the plaintiff would request the opportunity to conduct limited discovery aimed at disclosing the extent of Original's contacts with the forum. See Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 680-81 (1st Cir. 1992).

2.) The defendant's Massachusetts contacts must represent a purposeful availment of the privilege of conducting business in Massachusetts; and,

3.) The exercise of jurisdiction over the defendant must be reasonable in light of several factors. See Pritzker, 42 F.3d at 60-63.

### 1. *Relatedness*

The focus of the relatedness requirement is on "the nexus between the defendant's contacts and the plaintiff's cause of action." See Fairview, 56 F. Supp. at 138 citing Ticketmaster-New York v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994). Here, the plaintiff's claims spring directly from the defendant's contacts in Massachusetts. Edwards is a Massachusetts resident and most of the work he does for Original is in the Commonwealth. He is known in the industry as a man with great sway over the distribution of law enforcement apparel and accessories in New England. In this capacity, he was brought on by Original to help them strengthen their position in the New England market, especially in Massachusetts.

When Thomas Carson ("Carson"), Senior Vice President and Sales Manager of Original came to the Commonwealth for a successful business trip in 2001, he concentrated all his efforts on distributors in Massachusetts, taking orders in excess of $65,000.00 from almost a dozen dealers in a week. This trip began a fruitful entrance for Original into the entire New England market, including Connecticut.

Edwards negotiated and signed the Agreement that led to the CDC contract while in Massachusetts. It was not a case, as the defendant would portray, of Edwards simply signing a piece of paper and putting it in the mail. Edwards negotiated the contract, from his home and office in Massachusetts, with the defendant in California. This fact, along with the myriad of

other contacts Original has wit this forum, is enough to satisfy the "contract plus" requirement adopted by the Supreme Court. See Burger King v. Rudzewicz, 471 U.S. 462, 471-72 (1985).

As for the contract in dispute, Edwards facilitated the contract with the CDC, as it was within his New England territory. The idea for the CDC contract came about when Edwards asked Carson if he had given any "wear test" boots to a CDC representative on a Maryland sales exposition trip in 2003. Carson told him that he was not certain, for he had handed out lots of boots at that show. Edwards stressed to Carson that CDC was interested in the S.W.A.T. boot and needed some samples. That week, Edwards contacted the CDC and traveled from his office in Massachusetts to the CDC facility and met with the Chief of Tactical Operations, Major Bruce E. Bussiere ("Major"). Edwards spoke with him about the product and the Major agreed to accept several "wear test" samples. From his office in Massachusetts, Edwards arranged for several "wear test" boots to be ordered and shipped to the CDC. The CDC liked the boots and showed interest in ordering a large quantity of them. Edwards arranged for Horowitz Career Apparel and Uniforms of West Haven, CT to service the contract as the distributor.

Edwards was intimately involved in the facilitation of the CDC contract from his base in Massachusetts and Original has many ties to this forum regarding this action. Thus, the plaintiff's causes of action directly relate to the defendant's contacts in this Commonwealth and this Court may properly exercise personal jurisdiction over the defendant.

### 2. *Purposeful Availment*

"The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated or fortuitous' contacts with the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) (quoting Keeton v.

8

Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). The purposeful availment analysis is predicated upon foreseeability and voluntariness. See Fairview, 56 F. Supp. at 139. In order to be subject to Massachusetts' jurisdiction, a defendant need only have one contact with the forum state, so long as that contact is meaningful. See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 718 (1st Cir. 1996) citing McGee v. International Life Ins. Co., 355 U.S. 220 (1978).

Original's contacts with Massachusetts were neither random, isolated nor fortuitous. Terry Mackness ("Mackness"), President of Original Footwear, and Carson hired Edwards as an independent sales representative for Original because they had a firm desire to avail themselves of the fruitful Massachusetts marketplace for law enforcement apparel. He negotiated and signed the Agreement in Massachusetts.

Original knew that Edwards had the contacts and distribution network needed to create a strong and lucrative presence in the Commonwealth. To that end, Carson came out to Massachusetts in 2001 for what the defendant timidly calls "one visit to train Mr. Edwards . . . in selling footwear" Mackness Aff. ¶ 13. One would think, from that characterization, that a lowly salesman reluctantly visited with Edwards for an afternoon equipped with a little more than a shoehorn and a few black & white catalogs. Not so. What is left out of this characterization is that Carson, the Senior Vice President and Sales Manager of Original, and Edwards barnstormed Massachusetts for a full week. Working day and night, they visited distributors in almost a dozen cities and towns. Everywhere they went, Edwards was welcomed and the orders were written as fast as they could turn the pages of the ledger. By the end of the 2001 trip, Carson and Edwards had rung up a dizzying $65,000.00 in sales in one week, over *200 times* the volume of sales that Original had recorded in Massachusetts since its inception in 1999.

9

Not unexpectedly, Carson returned to the home office in California with the news that they had found their man in Massachusetts. From that time forward, there has been almost constant contact between Edwards in Massachusetts and the defendant's office in California. The parties communicate by telephone, mail and facsimile. Original sends Edwards marketing and promotion materials to disseminate in Massachusetts and other parts of New England. In turn, Edwards takes this material, and the boots themselves, to trade shows in Massachusetts and to distributors. Edwards also gives constant demonstrations to "end users" in public safety departments by showing the product directly to fire, police and EMS departments. In this capacity, Edwards hands out "wear test" samples for law enforcement personnel to try out the Original product. He recently gave 15-20 pair of "wear test" samples to the Massachusetts Department of Corrections, alone. As an illustration of how ingrained the Original S.W.A.T. boot has become in the Massachusetts law enforcement community, the Commonwealth, itself, has recognized this product and condoned its sale to state agencies. A Massachusetts distributor (Andrea's) holds a coveted Massachusetts State Contract for Original S.W.A.T. boots. Any municipality in Massachusetts can purchase Original S.W.A.T. boots, without the need of a bidding process, and get preferred pricing. This program was initiated by Edwards and is still in existence.

Original also directly solicits sales in Massachusetts from its home office in California. *See* Affidavit of Terry Mackness ("Mackness Aff.") ¶ 14. It solicits these sales via advertising materials sent to Massachusetts customers and distributors who have bought their products in the past. Mackness Aff. ¶ 14. Original receives orders via telephone, mail and facsimile directly from Massachusetts customers as well as through regional sales representatives, like Edwards. Mackness Aff. ¶ 12. Original also openly solicits Massachusetts business via their web site. See

attached as "Exhibit A." The site has testimonials from three Massachusetts residents who have worn Original boots and endorse the product. These Massachusetts testimonials cut a broad swath across the state and seem intended to do so. Today, due, in large part, to Edwards' actions on behalf of Original, the defendant's products are easily available in Massachusetts. There are currently more than twenty (20) dealers selling Original Footwear all over Massachusetts.

It seems certain that Original has succeeded in its goal of establishing its products squarely in the stream of commerce in Massachusetts. What could be more foreseeable and voluntary than the defendant hiring a representative in the forum state to avail itself of the marketplace and this goal being realized? See Fairview, 56 F. Supp. at 139. For these reasons, the plaintiff argues that it is proper for this Court to exercise personal jurisdiction over the defendant.

### 3. *Reasonableness*

There are five factors to consider when determining whether the exercise of personal jurisdiction over a defendant would "offend traditional notions of fair play and substantial justice." See Fairview, 56 F. Supp. at 140 quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). Those factors are: 1.) the defendant's burden of appearing in the forum state, 2.) the forum state's interest in adjudicating the dispute, 3.) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy, and 5.) the common interest of all sovereigns in promoting substantive social policies. See Pritzker, 42 F.3d at 63-64 (quoting United Elec. Workers v. 163 Pleasant St.Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).

Here, this Court's exercise of personal jurisdiction over the defendant is entirely reasonable. While courts have recognized that it is almost always inconvenient and costly for a

11

party to litigate in a foreign state, this fact is not significant in the analysis unless the defendant can establish that its burden of travel is oppressive in a special, unusual or otherwise constitutionally significant way. See Pritzker, 42 F.3d at 64. The defendant has met none such burden. An Original Footwear representative has traveled to Massachusetts in the past to drum up sales and can travel here again to defend its actions in the Commonwealth. Original cannot demonstrate any hardship beyond the ordinary cost and inconvenience of defending an action away from its home state. See Nowak, 94 F.3d at 718.

The second "reasonableness" factor to be considered is the forum state's interest in adjudicating the dispute. Massachusetts has a significant interest in this case, as the injured party is a resident of the Commonwealth needlessly preyed upon by a California corporation bent on feasting at the table of Massachusetts commerce but unwilling to be subjected to its laws. Also, the Agreement in question was formed in Massachusetts. The Commonwealth is the forum with the most at stake in this matter.

The third factor addresses the plaintiff's interest in obtaining convenient and effective relief. "The plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience. Sawtelle, 70 F.3d at 1395. Here, the plaintiff is a small, independent sales representative that opted to file suit in a state court in Massachusetts. The defendant corporation, with significant assets, has hired local Massachusetts counsel and removed the case to Massachusetts federal court. It would be an arduous task for Edwards to litigate these claims in California or another forum outside of Massachusetts. As such, this factor cuts in favor of Massachusetts retaining jurisdiction.

The respective judicial system's interests in obtaining effective resolution is the fourth factor to be considered in the reasonableness analysis. The interests of the respective

12

governments in promoting substantive social policies is the fifth factor. With regard to these last two elements, Massachusetts has the strongest interest in this case, regardless of the choice of law language in the Agreement. This contract was negotiated and formed in Massachusetts with the intent to do business in the Commonwealth and New England. A significant amount of the business transactions foreseen by the Agreement were to take place in the Commonwealth. As the defendant has, and continues to, successfully avail itself of the marketplace in the Commonwealth, Massachusetts is the forum most suited for these claims.

An analysis of the foregoing factors establishes that Massachusetts is the fairest and most efficient forum in which to litigate these claims. Furthermore, this Court should find that the exercise of personal jurisdiction over the defendant in Massachusetts does not offend any notions of fair play and substantial justice.

Although the determination of personal jurisdiction does not reach the merits of this case, the plaintiff feels compelled to respond, briefly, to the protestations in the defendant's memorandum. Edwards is certain that he can prove his case. Through the testimony of employees who have left Original, as well as through documents, Edwards will show that Mackness never intended to honor the Agreement signed in 2001. Edwards will also show that Mackness engineered the situation at hand in order to avoid paying Edwards his commission. He has at his disposal both the testimony and documents needed to prove all three causes of action against Original.

## CONCLUSION

For the reasons stated above, the defendant's motion to dismiss should be denied. In further support, Edwards relies on the Affidavit of William J. Edwards.

REQUEST FOR ORAL ARGUMENT

Pursuant to LR 7.1 (D), the plaintiff respectfully requests that the Court hold oral

argument in connection with the defendant's motion to dismiss.


Respectfully submitted for the Plaintiff,
by his attorneys,


_____
Conrad J. Bletzer, Jr. BBO# 045760
James M. Murphy BBO# 641755
Bletzer & Bletzer, P.C.
300 Market Street
Brighton, MA 02135
(617) 254-8900


Dated:  January 27, 2005

*28*

# EXHIBIT A

Original SWAT



**ORIGINAL S.W.A.T.**

- HOME
- PRODUCTS
- ABOUT US
- DEALER SEARCH
- BRIEFING ROOM
- TECH STUFF
- TESTIMONIALS
- FAQ
- CONTACT US

SWAT Lines Newsletter Signup

eMail:

[ SUBMIT ]

## SPORTSHOE COMFORT -- TACTICAL PERFORMANCE

### Testimonials

Send us your testimonial.

View Original S.W.A.T. Boots In Action here and here.

[ Watch our intro movie now! ]

"After 18 years in law enforcement and many pairs of boots and shoes, Original S.W.A.T.® is without a doubt the most comfortable boot I have ever had on my feet. At the end of the day you have as much comfort as you did at the beginning. You have made a true believer out of me and as far as I am concerned they will be my shoe of choice from now on."

**Captain Allen Freeman**
Spartanburg County Detention Facility SWAT Team
Spartanburg, SC

"Having just finished a review of Tactical Footwear for Police Magazine, I had missed this new boot, Original S.W.A.T.®. After wearing the boots in various activities, I can state that they are more comfortable and more supportive boot than the "en vogue" tactical boot from Germany. For the price of one pair of the other boots, I can purchase three pairs of Original S.W.A.T.® and have a boot that allows the feet to not feel like they have been in a war at the end of a long day."

**Scott Smith**
WO1, US Army, Ret,
Pittsburgh, PA

"I can honestly say that the Original S.W.A.T.® boot is one of those products that you not only immediately appreciate, but you feel obligated to tell your partner about it."

Original SWAT



www.dickkramer.com

**Dennis LeVine**
Special Agent FBI, Ret.,
Hermosa Beach, CA

"I feel like I am wearing my sneakers at work. These boots are killer."

**Officer John Ferrante**
Bloomfield, NJ

"The boots arrived on Wednesday of last week and they haven't been off my feet yet. The wife is not happy about the sheets getting dirty!"

**Neil King**
Patrol Gear, Australia

"The most comfortable and easy to break in boots I have ever worn. I must say that I am extremely satisfied. Thanks for producing an excellent boot."

**Patrolman K.P. Nolan**
Coventry, NJ

"Took them right out of the box and put them on. What a perfect fit."

**Officer Cindy Smither**
Madisonville, TN

"This is the first pair of boots that are comfortable and believe me I have tried them."

**Patrolman Steve Hames**
Decatur, AL

"I would purchase them for the comfort alone."

**Deputy Ray Harper**
Modesto, CA

"I found the Original S.W.A.T. ® boots to be superior in comfort in both patrol and tactical conditions."

**Sgt. L. Allen**
Modesto, CA

Original SWAT

Colorado winters and East Coast rainstorms, these shoes deliver."

**Eric Claytor**
Internet Director Law Enforcement Product News
Denver, CO

"I've worn many brands of boots during my 8 years in law enforcement, and 10 in the military. I have to say, hands down, these are the most comfortable boots I've ever owned. Thanks much for an outstanding boot! I've recommended them to all the officers in my department."

**FTO Kirk Worthington**
Spokane, WA

"It is rare that you actually get a product these days that does what it says it will do. I am recommending that upon the next purchase of boots for our team, we purchase the Original S.W.A.T.® boot. Thank you very much."

**Sgt. Darren Bondy**
Mount Clemens, MI

"I'll never buy another brand of boots again."

**Officer L. Garbini**
Tucson, AZ

"For some reason, I decided to purchase your boots. Now, I'll never go away! Your boots make running so much easier and my feet are not sore afterward. Thanks for the quality of the boots!"

**Officer Jason Petrie**
Chesapeake, VA

"From the moment I put my Original S.W.A.T.® Boots, I knew I was on to something special."

**Officer D. M. Avery**
Norfolk, VA

"I wanted to let you know I have been wearing my Original S.W.A.T.® Boots on every SRT mission I have been called out on. They are the most comfortable boots I have had for this type of work."

Original SWAT

**Deputy Blair Benzler**
San Rafael, CA

"Your boots are excellent! I've been on a river shore with them, on side of hills, gravel embankments and oil spills. I'm more than pleased."

**Deputy H.York**
Cathlamet, WA

"I walk approximately 10-12 miles a day, and from the first day I put your boots on, I have not been tired and did not have blisters breaking in the boots, nothing but comfort."

**Capt. Lisa Young**
Ludlow, MA

"I want to thank you for the boots, they fit and feel great. I put the flier up in the patrol break room with a recommendation."

**Officer Dave Nemeth**
Torrance, CA

"These boots are really something."

**Deputy James F. Meyer**
Sterling, IL

"I know what I want in boots and these new boots deliver."

**Ron Woodson**
Colorado Springs, CO

"These are the most amazingly comfortable shoes I have ever worn!"

**James Robbins III**
Houston, TX

"I think Original S.W.A.T.® will be my boots for life."

**Ryan Burk**
Fresno, CA

"Great product! Sure beats the heck out of the other brands."

**John Wilkes**
Bainbridge, WA

"I have worn your boots everyday for the past six months. They are the most comfortable, lightest boots I have ever worn."

**Officer Glen Hamann**
Titusville, FL

"I have worn boots for most of my adult life going back to active duty in the Marine Corps to being a police officer now and by far they are best boots I have ever owned."

**Patrolman Mark Zebraski**
Northfield, OH

"Your boots are a godsend to my feet. Best boots I have ever had, thanks."

**Deputy Trent M. Dye**
Washington Courthouse, OH

"They are without a doubt, the most comfortable boots I have every worn. I was skeptical about your claims, but I am a believer now. Keep up the good work."

**Kurt Hawes**
Attleboro MA

"These boots are great! I have worn many different boots from different manufactures. I have always had difficulty keeping my feet comfortable at work. I no longer have this problem wearing the Original S.W.A.T. ® Boots."

**Deputy John Munk**
Minden, NV

"Wearing your Classic 9" Leather Waterproof boot, my feet never got cold and or wet. Your boots are incredibly comfortable and the best purchase I have made for work. I'll never wear another brand again."

**Officer John Hawkins**
Rye Brook, NY

Original SWAT

"Your boot beats any other I have tried, hands down, not only in price, but in comfort and durability."

**Officer Todd Bynon**
Sugar Notch, PA

"You have found a customer for life!"

**Officer John Hendrix**
San Diego, CA

"Their not boots, they're cross trainers on steriods."

**Bruce Combs**
Hawaii, HI

"I just wanted to say that your boots are the best thing that's happened to uniform officers everywhere."

**Deputy John Owens, Jr.**
Schuyler, NE

"I am extremely rough on boots. The Original S.W.A.T.® Boots are very durable. I can't say the same for the other boots I've tried."

**Deputy Michael DeLara**
Grand Prairie, TX

"These are by the far the most comfortable boots I have worn. I was surprised at the short time it takes to break in the boots."

**Officer Roger Caillouet**
New Iberia, LA

"These boots are really something. I have never owned a pair of boots that didn't require a break in period, with its inherent periods of somewhat painful discomfort. Thank you for the fine quality boots. Keep up the good work."

**Deputy James F. Meyer**
Sterling, IL

"While this shoe may not have been designed with a bike patrol officer in mind, it is

a valuable alternative to the current group of shoes available to us."

**Sgt. John F. Washington, Jr.**
Philadelphia, PA

"I was surprised that they were even better than my regular army boots."

**Colin MaK**
Boston, MA

"Original S.W.A.T.® seems to be a better boot than any I have previously worn."

**Lance Foster**
Platte City, MO

"I got your boots last week and I'm very happy with them. I still love the game of the street. At forty-three, I have to be a little more careful of the bones than I was in my salad days in the eighties. Your boots are well designed and comfortable, but more importantly, they actually fit."

**Sgt. John Converse**
Rockville, MD

"I was really impressed with the comfort of the boots and arch support. The boots have gotten more and more comfortable as I wear them. I am now a convert and will never touch another brand again. Thank you for a wonderful product!"

**Sgt. Gary Wieden**
Lawrence, KS

"I would like to thank Original S.W.A.T.® for finally making a boot for the hard working cop out on the street who demands the best from their equipment. These boots make you feel like you're walking on air."

**Sgt. D. Peterson Sherkston**
Ontario, BC, Canada

"I have real flat feet and my arches are non-existent. I was looking at getting orthodics to support my tired arching feet. However, I will only need them for my off-duty shoes because my Original S.W.A.T.® Boots are just so comfortable! You can bet when the time comes to buy another pair, they will be Original S.W.A.T.®. Thanks!"

Original SWAT

**Dep. Luckey Wright**
Joshua, TX

"The fit is like an athletic shoe. Virtually not heel slippage, means no blisters. They break in instantly. I really like them."

**Jody Eldred**
Los Angeles, CA

"I have been wearing your boots for the past year and I love them."

**Officer Rob Lenke**
Fairfield, CA

"I have to say that your boots are doing a great service on the streets of Chicago."

**Officer Donald Carson**
Chicago, IL

"I couldn't be more pleased with the product. Thanks!"

**Deputy M. Perry Harris**
Houston, TX

"The Classic 9" Side Zip boots are outstanding! Thanks!"

**S/A Jeff LaRock**
Ventura, CA

"After a week of "field trials" I can say Original S.W.A.T. ® Boots are great! My feet haven't felt so good at work in a long time. Thanks.

**Ed Yager**
Los Angeles, CA

"I think you have a great product and I will enjoy wearing them throughout my career."

**Deputy Bill Schierman**
Ventura, CA

"I used the boots last night on a ride along and I loved them. They felt like I was

Original SWAT

wearing regular shoes."

**Adam Dyas**
Gilbert, AZ

"They are all that people have said they are, and then some."

**Brian Fulton**
Lacy-Lakeview, TX

"I am recommending to the Chief of Police that we supply these boots to all of our Officers."

**Officer Joseph Hasara**
Philadelphia, PA

"I got the boots and 15 minutes into wearing them I am impressed."

**Curt Carpenter**
Alabaster, AL

"I did everything I could to find something wrong with these boots...and you know what? I couldn't! All I can say is WOW! As far as I am concerned, there is no other tactical boot or regular boot that gives you the comfort and quality that these do. These boots should be the only boot any scenario paintball player should wear and we will make sure of that!

**Charles "Damian" Allen**
Owner TAW Paintball/TAW X-Treme, Inc

"I am going to recommend to my Academy Chief that we make these boots the uniform item for our training section."

**Captain Greg Conrad**
Riverhead, NY

"I have bone spurs and arthritis in my right foot that is usually quite painful by the end of training no matter what boot I wear. After a three-day training period in your boots, I was still walking without my normal pain that would cause a noticeable limp by days ends. Thanks."

**Officer Robert Reed**

Original SWAT

Cypress, CA

"Just want to let you guys know that I too along with so many others, am extremely happy with your boots. These are by far the best boots I have ever worn and because I like them so much, I won't go anywhere else."

**Officer Kevin McCarthy**
Vallejo, CA

Home - Products - About Us - Dealer Search - Briefing Room
Tech Stuff - Testimonials - FAQ - Contact Us

©2004 The Original Footwear Co. All Rights Reserved.
Privacy Policy