UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1/28

|   |   |
|---|---|
| **WILLIAM J. EDWARDS,** <br> Plaintiff <br><br> v. <br><br> **THE ORIGINAL FOOTWEAR COMPANY,** <br> Defendant | ) <br> ) <br> ) <br> ) **Civil Action** <br> ) **No. 04-12593-RGS** <br> ) <br> ) <br> ) <br> ) |

### AFFIDAVIT OF WILLIAM J. EDWARDS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

I, William J. Edwards, state on oath the following:

1. I am a resident of Massachusetts, residing at 173 Vine Rock Street in Dedham, Massachusetts. I am an independent manufacturer's representative, primarily in the law enforcement apparel and accessories business. I have an active network of dealer contacts in the industry, primarily in Massachusetts.

2. From 2001 to the present, I have been an independent sales representative for Original Footwear. I was hired to "beef up" the New England market for their products, especially in my home state of Massachusetts. Original was especially interested in expanding sales of their S.W.A.T. footwear into the New England law enforcement market.

3. In 2001, I signed an Independent Sales Representative Agreement ("Agreement") with the defendant. A Terry Mackness signed as "Chief Executive Officer/President" of The Original Footwear Company. The Agreement designated me as an Original representative. I negotiated and signed the Agreement in Massachusetts.

4. Before the signing of the Agreement in 2001, Original's sales in Massachusetts were a total of $315.00. They had one distributor and a single sale.

5. In my role as an Original representative, I have sought to actively garner sales opportunities for Original S.W.A.T. footwear in my designated territory of Massachusetts, Connecticut, Maine, New Hampshire, Rhode Island and Vermont. Under the terms of the Agreement, the defendant was to pay me a 10% commission on all sales of Original S.W.A.T. footwear in my territory.

6. Relying on this agreement, I facilitated a lucrative contract for Original S.W.A.T. footwear to be purchased by the Connecticut Department of Corrections ("CDC"). This contract is worth $1,500,000.00. It began when I asked Carson if he had given any "wear test" boots to the CDC on a Maryland sales exposition trip in 2003. Carson said he was unsure, as he had handed out a lot of product at the expo. I told Carson that the CDC was interested in the S.W.A.T. boot and needed some samples. Soon thereafter, I contacted the CDC and traveled from my office in Massachusetts to the CDC facility and met with the Chief of Tactical Operations, Major Bruce E. Bussiere. I told him about the boots and the Major agreed to accept several "wear test" samples. From Massachusetts, I arranged for several "wear test" boots to be ordered and shipped to the CDC. The CDC liked the boots and wanted to order a large quantity of them.

7. As the Connecticut Department of Corrections is in my territory, I arranged for Horowitz Career Apparel and Uniforms of West Haven, CT to service the contract as the distributor.

8. Without my receiving any notification, the contract was funneled to another distributor, Lehigh Safety Shoe Company, LLC of Vestal, NY. It is my belief that this was done to deprive me of my rightful commission. Even though the Connecticut Department of Corrections is in my territory, as was the distributor I had set up to service the contract, the defendant has refused to pay me the 10% commission due on the contract, claiming the sales are now out of my territory.

9. Several Original employees have contacted me and said that they have left the company over the way I was treated in this instance; they include Carson, Senior Vice President and Sales Manager, Todd Dunaway, salesman and Lorrie Mattox, Warehouse Manager.

10. As a representative of Original Footwear in Massachusetts, I promote and market their products in the Massachusetts market. Massachusetts is my most active state as far as contacts and sales are concerned.

11. In 2001, Carson traveled to Massachusetts especially to accompany me on sales calls. He was in Massachusetts for a week, training me to sell Original footwear. I brought him into my active distribution network, which included many dealers in Massachusetts.

12. In that week, with the intention of selling Original Footwear to dealers, we went to, amongst others: Andrea's Police Supply in Raynam, MA, Triple A Police Supply in Dedham, MA, Trippi's Uniforms in Shrewsbury, MA, Simon's Uniforms in Lynn, MA, Dough Boy Police Supply in Revere, MA, Ben's Uniforms in Amesbury, MA, Community Fire in Oxford, MA, Century Uniform in Chicopee, MA, and Police Survival Equipment in Billerica, MA.

13.    In the week with Carson, I would introduce him and his product to my network of dealers in Massachusetts. That week we sold approximately $65,000.00 of Original Footwear product to the Massachusetts dealers listed in paragraph 7 and others.

14.    After Carson returned to California from his wildly successful Massachusetts sales trip, I got comfortable with the sales of the Original Footwear and would pitch it to dealers all over Massachusetts.

15.    I continue to solicit sales for Original Footwear as an independent sales representative. My sales stops are primarily in Massachusetts as it is, by far, my most productive state as far as networking and sales. In fact, I was hired by Original Footwear to improve their contacts in New England and Massachusetts, especially.

16.    During the approximately three years that Carson and I were with Original Footwear, I would often talk to him 2-3 times a day. He would call me and vice-versa. I would call constantly with orders and questions. I would also speak with Todd Dunaway, also no longer with the company. I would also speak with women in the office who took the orders and, occasionally, to Terry Mackness.

17.    During his time with Original Footwear Carson and others would send me letters of instruction and encouragement. I would also fax them orders from the dealers.

18.    In my position as an Original Footwear representative in Massachusetts, I market and promote the product. This includes taking the actual boots to trade shows in Massachusetts and putting them on the display table. I also am constantly giving demonstrations for public

safety departments by showing the products directly to fire, police and EMS departments. Original gives me marketing and promoting literature to display and disperse in Massachusetts.

19.    I also hand out "wear test" samples. I gave 15-20 pair to the Massachusetts Department of Corrections, alone. The Massachusetts Department of Corrections Tactical Team still buys Original Footwear from Andrea's, an account I service. In fact, Andrea's holds the Massachusetts state contract for Original S.W.A.T. boots.

20.    The Original Footwear web site has testimonials from three Massachusetts residents who have used the product and endorse it. They are Capt. Lisa Young from Ludlow, Massachusetts; Kurt Hawes from Attleboro, Massachusetts; and Colin Mak from Boston, MA.

21.    Thanks, in large part, to my work, there are currently more than twenty (20) dealers selling Original Footwear all over Massachusetts. As per Original's plan when they hired me, Original Footwear's S.W.A.T. boots are a sought after item in Massachusetts and readily available all over the state.

Signed under the pains and penalties of perjury on January 26, 2005.

_William J. Edwards_
William J. Edwards

## **CERTIFICATE OF SERVICE**

    I hereby certify that I served a true copy of the above documents on the party listed below by Federal Express, priority overnight mail.

        Bruce F. Smith, Esq.
        Jager Smith, P.C.
        One Financial Center
        Boston, MA 02111

Date: January 27, 2005

                                                            James M. Murphy